[Civ. No. 11521.   Second Appellate District, Division Two.—October 4, 1937.]

L. BOTELER, as Trustee, etc., Plaintiff and Respondent, v. JACK CONWAY, Appellant; CADWALLADER–GIBSON CO., INC. (a Corporation), Intervener and Respondent.

Gang & Kopp, Martin Gang and Robert E. Kopp for Appellant.

Loton Wells and Hubert F. Lauharn for Plaintiff and Respondent.

Bauer, Macdonald, Schultheis & Pettit and Lee G. Paul for Intervener and Respondent.

McCOMB, J.—From a judgment in favor of intervener and also plaintiff for costs, after trial before the court without a jury in an action to enforce a stockholder's liability defendant appeals.

Viewing the evidence most favorable to plaintiff (*Patten & Davies Lbr. Co.* v. *McConville,* 219 Cal. 161, 164 [25 Pac. (2d) 429]), the essential facts are:

Joseph N. Landfield, Louis N. Landfield and Robert C. Hulbert, desiring to engage in the business of manufacturing radios and to secure a loan from defendant, entered into an agreement June 25, 1929, which, among others, contained the following provisions:

"It is further hereby agreed that with reasonable dispatch the parties to this agreement shall cause to be incorporated a corporation under the laws of the State of Nevada, to be known as MONARCH RADIO CORPORATION, LTD., or such other name as the incorporators shall decide upon.

"It is understood that the said JACK CONWAY and D. CHASE RICH shall be additional incorporators and that said corporation shall acquire the partnership business at a consideration of 50 per cent of the total Common stock of the said corporation. It is understood and agreed that the said 50 per cent of the Common stock of the said corporation, together with any other emoluments which might be taken by the promoters, shall be divided as follows: 20 per cent thereof to J. N. LANDFIELD, 20 per cent thereof to LOUIS N. LANDFIELD, 26⅔ per cent to ROBERT C. HULBERT, and 33⅓ per cent to JACK CONWAY. It is distinctly understood and agreed that the interest in the corporation to be distributed to JACK CONWAY is in consideration of such aid as the said CONWAY might extend the corporation in the sale of such securities as the corporation might decide to distribute to the public."

Thereafter defendant endorsed on the bottom of the agreement hereinbefore mentioned the following:

"In consideration of the foregoing agreement I hereby agree to loan the foregoing partnership $10,000.00, upon the terms and conditions as hereinbefore set forth.

"Dated: Los Angeles, California, June 5, 1929

"JACK CONWAY

"(Signed)"

Subsequently it was arranged through a Nevada agency that a Nevada corporation under the name of Monarch Radio Corporation, Ltd., be formed and stock of said corporation issued. This was done for the express purpose of evading the necessity of obtaining a permit from the corporation commissioner of the state of California to issue stock, and at no time was a permit ever obtained from the Commissioner of Corporations of the state of California for the issuance of the stock of Monarch Radio Corporation, Ltd.

June 11, 1929, a Mr. Cheney presented to a directors' meeting of the Monarch Radio Corporation, Ltd., in the city of Reno, state of Nevada, an offer to exchange certain assets in consideration of the Monarch Radio Corporation, Ltd.'s issuing shares of its stock to the following persons in the amounts set opposite their respective names:

Louis N. Landfield............5000 shares common

Robert C. Hulbert............6667 shares common

J. N. Landfield..............5000 shares common

Jack Conway................8333 shares common

The offer was accepted by the directors and certificates of stock issued to the parties and in the amounts as set forth above. The certificates were delivered to Mr. Cheney, who was authorized to receive them as the agent of Louis N. Landfield, Robert C. Hulbert and J. N. Landfield. He mailed these certificates to Mr. Rich in Los Angeles, who in turn delivered them in the city of Los Angeles to the respective parties named therein, including defendant.

August 29, 1929, Monarch Radio Corporation, Ltd., entered into an agreement with Lloyd Products, Inc., to purchase from the latter 10,000 radio cabinets at an agreed price.

September 3, 1929, Lloyd Products, Inc., by a written agreement assigned to intervener any and all amounts due it from Monarch Radio Corporation, Ltd., or defendant until such times as all amounts due from Lloyd Products, Inc., to intervener were paid.

Upon Monarch Radio Corporation, Ltd.'s, failure to perform its contract, suit was instituted against defendant to enforce a stockholder's liability against him.

These are the questions presented for our determination:

*First: If the agreement of June 5, 1929, is considered as a preincorporation subscription agreement, was stock issued pursuant thereto void, unless a permit for the issuance thereof was first obtained from the Corporation Commissioner of the state of California?*

*Second: Was there substantial evidence to sustain the trial court's finding that on the 29th day of August, 1929, and thereafter up to and including the 17th day of September, 1929, defendant was the owner and holder of 8,333 shares of the common stock of Monarch Radio Corporation, Ltd.?*

The answer to the first question must be in the affirmative. Section 25 of the Corporate Securities Act of the state of California as it read June 5, 1929, the date of the purported preincorporation subscription agreement, was as follows:

"SUBSCRIPTION FOR SHARES PRIOR TO INCORPORATION. Neither this act nor any provision hereof shall be deemed to prohibit subscriptions for shares of a domestic corporation made prior to the incorporation thereof and set forth in the article of incorporation; but such subscription shall be deemed to have been made and accepted upon the condition that such corporation shall be incorporated within ninety days thereafter and, when incorporated, shall with reasonable diligence apply for and secure from the commissioner a permit authorizing the issue of the shares so subscribed for, in accordance with such subscriptions; provided, however, that except as may be specifically required by any law of this state, nothing herein contained shall be construed as permitting the collection of any portion of the consideration to be paid on account of such subscriptions, unless and until a permit shall have been issued by the commissioner authorizing such collection; nor except as may be specifically required by any law of this state, *nothing herein contained shall be construed as permitting the taking of subscriptions for any security of any company other than a domestic corporation* or to make collection of any portion of the consideration to be paid on account of subscriptions unless and until a permit shall have been issued by the commissioner authorizing the taking of such subscriptions or the collection thereof." (Italics ours.)

The law is settled that under section 25 of the Corporate Securities Act as it existed June 25, 1929, a preorganization subscription agreement is void, unless a permit for the

same has been obtained from the Commissioner of Corporations of the state of California. (*California Western Holding Co.* v. *Merrill*, 7 Cal. App. (2d) 131, 142 [46 Pac. (2d) 175].) ■ Therefore, since it is conceded that no permit from the Commissioner of Corporations of the state of California was ever obtained in the instant case, stock issued pursuant to the agreement of June 5, 1929, was void.

■ The second question must be answered in the negative. In the instant case the undisputed evidence is that the certificate of stock of Monarch Radio Corporation, Ltd., standing in defendant's name, was issued in the state of Nevada and in that state was delivered to Mr. Cheney, who was not defendant's agent, and by him mailed to Mr. Rich in Los Angeles, California, and delivered by the latter to defendant in this state. Since the law is settled that stock of a foreign corporation issued in another state and delivered in this state to the purchaser is void, unless a permit is obtained from the Commissioner of Corporations of the state of California (*Pollak* v. *Staunton*, 210 Cal. 656, 662 [293 Pac. 26]; *Gillis* v. *Pan American Western Pet. Co.*, 3 Cal. (2d) 249, 251 [44 Pac. (2d) 311]), defendant did not become a stockholder of Monarch Radio Corporation, Ltd., and was not subject to a stockholder's liability for the debts of such corporation. (*Munton* v. *Bekins,* 9 Cal. App. (2d) 228, 229 [49 Pac. (2d) 338].)

In *Munton* v. *Bekins, supra,* which was a suit to enforce a stockholder's liability, wherein the defense was set up that the stock was void because issued in violation of the California Corporate Securities Act, Mr. Presiding Justice Crail, speaking for this court, says at page 229:

"If these defenses were, or either of them was, sustained by the evidence, the stock was void under the law as it then existed and the appellant was not a stockholder of the corporation and no recovery might be had against him as such. (*Golden Eagle Milling Co.* v. *Albin*, 219 Cal. 357 [26 Pac. (2d) 475]; *Live Oak Cemetery Assn.* v. *Adamson*, 106 Cal. App. (Supp.) 783 [288 Pac. 29]; *Honn* v. *Hamer*, 81 Cal. App. 276 [253 Pac. 336].)"

The foregoing conclusions make it unnecessary for us to pass upon the other propositions presented by counsel.

For the foregoing reasons the judgment is reversed.

Crail, P. J., and Wood, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 15, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1937.