[Civ. No. 17104.   Second Dist., Div. Two.   Sept. 21, 1949.]

KENNETH C. HARDY et al., Appellants, v. MUSICRAFT
RECORDS, INC., Respondent.

Demetriou & Viney and John F. Reed for Appellants.

A. E. Coppleman and Allan J. Greenberg for Respondent.

WILSON, J.—Appeal by plaintiffs from a judgment in favor of defendant in an action for money had and received wherein plaintiffs seek to recover the amount paid by them for shares of stock in Jefferson-Travis Corporation, predecessor of defendant Musicraft Records, Inc., the stock having been issued, sold and transferred to plaintiffs without a permit therefor from the Commissioner of Corporations of the State of California.

The transaction began with the receipt by plaintiff Kenneth C. Hardy at his residence in Los Angeles of a letter from Jefferson-Travis Corporation forwarded from New York dated June 26, 1946, reading as follows:

"At the request of Mr. Arthur Hatz, I am herewith enclosing form of purchase commitment letter to be executed by yourself and Mrs. Myrtle W. Hardy in connection with your purchase of 5,000 shares of the common stock of Jefferson-Travis Corporation. Arrangements are being made for the issuance of the 5,000 shares and these will be delivered, draft attached, to the California Bank in accordance with your instructions.

"Will you please return the signed letter to the writer as soon as possible. A self-addressed stamped envelope is enclosed for your convenience."

Enclosed with the foregoing communication was the "form of purchase commitment letter" referred to therein prepared by representatives of the corporation which plaintiffs were requested to sign and return. The purchase commitment letter is addressed to Jefferson-Travis Corporation in New York. The portions pertaining to this decision read as follows:

"This will confirm our agreement to purchase from you five thousand (5,000) shares of the authorized Common Stock of your Corporation at $3.50 per share.

"We hereby confirm that the purchase of these shares is being made by us without representations or warranties of any kind made by you or by anybody on your behalf . . .

"It is requested that delivery of said certificates be made, $17,500 draft attached, to California Bank, 625 South Spring Street, Los Angeles, California, Attention: Mr. Geyer."

Within a few days after receipt of the letter of June 26 with its enclosure, plaintiffs signed the purchase commitment letter in the form requested by the corporation and sent it by mail from Los Angeles to the corporation in New York.

Under date of July 8, 1946, certificates representing 5,000 shares in the corporation were forwarded from New York to the California Bank in Los Angeles with a sight draft attached for $17,500. On July 15, 1946, plaintiffs paid the draft at the California Bank and received the two certificates of stock.

The corporation at no time had a permit from the Commissioner of Corporations of California to sell, offer for sale or transfer its shares or securities.

In April, 1947, plaintiffs discovered that no permit had been procured by the corporation for the sale of its shares and thereupon demanded return of the amount paid for the stock and offered to return the certificates. The corporation having refused to refund the money plaintiffs brought this action.

The questions to be determined are whether the shares were sold by the corporation to plaintiffs in New York or in California, and in which state title to the certificates and the shares passed to plaintiffs—if in New York the sale was valid and the judgment must be affirmed; if in California it was void for want of a permit and plaintiffs are entitled to recover the amount paid.

Among the applicable provisions of the statutes in force at the time of the transaction in question are the following portions of the Corporate Securities Act [Stats. 1917, p. 673; 2 Deering's Gen. Laws, Act 3814]: "The word 'company' includes all domestic, foreign and private corporations." (§ 2(a)3 as amended Stats. 1945, ch. 399, p. 853.) "No company shall sell any security, . . . or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner [of Corporations] a permit authorizing it so to do." (§ 3 as amended Stats. 1941, ch. 615, p. 2064.) "Every security issued by any company, without a permit of the commissioner authorizing the same then in effect,

shall be void . . . ." (§ 16 as amended Stats. 1933, ch. 898, pp. 2308, 2316.)

Also applicable are the following provisions of the Civil Code* which were in effect at the time the transaction took place: "Title to a certificate and to the shares represented thereby can be transferred only . . . By delivery of the certificate . . ." (§ 330.1.) " 'Delivery' means voluntary transfer of possession from one person to another." (§ 330.21.) These provisions apply "to certificates for shares . . . and to transfers made in this state whether of certificates for shares of domestic or foreign corporations, . . ." (§ 330.22.)

■ Without exception it has been held that shares of stock, certificates of beneficial interest and other securities issued by a corporation without a permit of the Commissioner of Corporations therefor are void. (*Miller* v. *California Roofing Co.*, 55 Cal.App.2d 136, 141 [130 P.2d 740] ; *Herkner* v. *Rubin*, 126 Cal.App. 677, 681 [14 P.2d 1043] ; *Mary Pickford Co.* v. *Bayly Brothers, Inc.*, 12 Cal.2d 501, 512-13 [86 P.2d 102] ; *MacDonald* v. *Reich & Lievre, Inc.*, 100 Cal.App. 736, 738 [281 P. 106].) This rule is applicable to shares of a foreign as well as of a domestic private corporation. (Corporate Securities Act, § 2(a)3, *supra*; *Pollak* v. *Staunton*, 210 Cal. 656, 662 [293 P. 26] ; *Boteler* v. *Conway*, 23 Cal.App. 2d 35, 39 [72 P.2d 208].)

■ Applying the law to the facts above stated, it is clear that the shares were sold in California and that the certificates were delivered in California. The transaction was initiated by the letter mailed by the corporation in New York to plaintiff Kenneth C. Hardy at his residence in Los Angeles. There was no enforceable contract of sale until plaintiffs signed and placed in the United States mail the purchase commitment letter which had been drafted in New York and forwarded with the corporation's letter to Mr. Hardy. The letter from the corporation of June 26, 1946, was an offer to sell and the signed and mailed acceptance constituted the only consummated or enforceable contract between the parties.

Since the offer was received and accepted in California

---

*The sections of the Civil Code referred to were adopted in 1931 as a part of the statute revising the corporation law of California (Stats. 1931, ch. 862, p. 1762 et seq.) and were in effect at the time of the transaction in question in this action. Sections 330.1, 330.21 and 330.22 were repealed in 1947 (Corp. Code, § 100001) and the provisions of those sections were re-enacted respectively in sections 2466, 2453 and 2463 of the Corporations Code. (Stats. 1947, ch. 1038, p. 2309.)

by plaintiffs and the certificates were delivered in this state to them by defendant's agent, which accepted payment at the time of delivery, the contract was in all respects completed here. There is no pretense that the certificates were delivered in New York since there was no delivery until the purchase price of the stock had been paid. The corporation requested plaintiffs to sign the purchase commitment letter and plaintiffs did so. That letter expressly required delivery of the certificates, with draft attached, at the California Bank. The sight draft accompanying the certificates required payment of the purchase price to the California Bank as a condition precedent to the delivery of the certificates of stock to plaintiffs. Title to a certificate and to the shares represented thereby can be transferred only by delivery of the certificate. (Civ. Code, § 330.1, *supra*, in effect in July, 1946, now Corp. Code, § 2466.)

The agreement by plaintiffs to purchase the shares having been made in California and the certificates representing the shares having been delivered to them in California the transaction is governed by the law of this state. (Civ. Code, § 1646; *Hayter* v. *Fulmor*, 66 Cal.App.2d 554, 558 [152 P.2d 746].)

Defendant relies on *People* v. *Twedt*, 1 Cal.2d 392 [35 P.2d 324], and *Miller* v. *California Roofing Co.*, 55 Cal.App. 2d 136 [130 P.2d 740]. There is nothing in the Twedt case favorable to defendant. The statute of limitations was the principal question involved. The agreement of sale had been made two or three days before payment was transmitted through the mail. The court held that the sending of the purchase price by the buyer was not a necessary part of the contract. In the Miller case the purchase price was paid and a receipt obtained for the shares of stock before the permit was obtained but the stock was not issued until after the corporation had received its permit. The sale was held to be in violation of the statute but plaintiff was denied relief because the parties were *in pari delicto*. In the instant case plaintiffs were blameless. The evidence is uncontradicted that they did not know a permit had not been procured until several months after they had purchased the stock.

The provisions of the Corporate Securities Act are levelled against the seller and not against the buyer. (*Eberhard* v. *Pacific Southwest L. & M. Corp.*, 215 Cal. 226, 228 [9 P.2d 302]; *Western Oil & Ref. Co.* v. *Venago Oil Corp.*, 218 Cal. 733, 744 [24 P.2d 971, 88 A.L.R. 1271]; *Security-First*

*National Bank* v. *J. G. Ruddle Properties, Inc.*, 218 Cal. 435, 441 [23 P.2d 1016].) ▉ It was the duty of the corporation to procure a permit. No obligation rested on the buyers to ascertain whether or not a permit had been issued. They had a right to assume that the corporation had complied with the law before offering its securities for sale.

Defendant also relies on *Robbins* v. *Pacific Eastern Corp.*, 8 Cal.2d 241 [65 P.2d 42]. This case involved the exchange of stock of one corporation for that of another. The court held (p. 272 et seq.) that since the construction of the contract requiring New York delivery was equally reasonable with the construction requiring California delivery it should be given such interpretation as would make it lawful rather than unlawful. The contract in the instant case came into existence in California when plaintiffs placed their acceptance of the corporation's offer in the mail. There is no ambiguity in the contract and nothing which can be interpreted as requiring delivery of the certificate in New York. On the contrary the purchase commitment letter signed by plaintiffs expressly required that both delivery of the certificates and payment therefor be made in California. The contract was fulfilled according to its terms.

Since the sale of the shares and the transfer and delivery of the certificates conveying title were made in violation of the statute the transaction is void and plaintiffs are entitled to recover the amount paid.

Judgment reversed with the following directions to the trial court:

1. To strike paragraphs I, II, III and IV of the findings of fact and to insert in lieu thereof the following: "The court finds that all allegations of plaintiffs' complaint are true and the allegations contained in defendant's answer are untrue."

2. To strike paragraphs I, II and III of the conclusions of law and to insert in lieu thereof the following: "That plaintiffs are entitled to recover from defendant the sum of $17,500.00, together with interest thereon from July 15, 1946, at the rate of 7 per cent per annum, together with plaintiffs' costs of suit."

3. To strike the last paragraph of the judgment and to insert in lieu thereof the following: "It Is Ordered, Adjudged and Decreed that plaintiffs have and recover of and from defendant Musicraft Records, Inc., alias Jefferson-Travis

Corporation, the sum of $17,500.00, together with interest thereon from July 15, 1946, at the rate of 7 per cent per annum, together with their costs herein expended in the sum of $_____."

4. Upon proof of plaintiffs' costs to insert the amount thereof in the judgment.

Moore, P. J., and McComb, J., concurred.