[Civ. No. 4270.   Fourth Dist.   June 23, 1952.]

FLOYD C. BERNARD, Plaintiff, v. JOSEPH SHURE et al.,
Respondents; MIDWAY ENTERPRISES, INC. (a Corporation), Appellant.

McLeod & McLeod, Gray, Cary, Ames & Frye for Appellant.

Luce, Forward, Kunzel & Scripps for Respondents.

Edmund G. Brown, Attorney General, and Ralph W. Scott, Deputy Attorney General, as Amici Curiae for Commissioner of Corporations.

BARNARD, P. J.—This appeal involves the cancellation of certain shares of stock in Midway Enterprises, Inc., which was organized for the purpose of operating drive-in motion picture theaters.

Four persons, including the plaintiff Bernard and the defendant Joseph Shure, had operated certain theaters as a partnership. In June, 1948, they caused this corporation to be organized under the laws of Nevada, with a capitalization of 800,000 shares of the par value of $1.00 each. At the organization meeting in Carson City the resignation of the Nevada directors was accepted and Shure, Bernard and one Frank were elected as directors, and Shure was elected president. Frank was not one of the promoters, and he paid cash for his 50,000 shares. The next entry in the minutes consists of an unsigned waiver of notice of a special meeting of the board of directors "to be held at the offices of the corporation, at 3901 Midway Drive, San Diego, California, on the 30th day of June, 1948." The minutes of this meeting, held in San Diego, show that Shure and Bernard were present but Frank was absent; that it was agreed that certain shares of stock should be issued in exchange for the assets of the former partnership; and that it was further agreed that after those shares were issued, there should be issued an equal number of "promotional shares of stock." The only other minutes are those of a meeting held in San Diego on July 17, 1948, at which Shure and Bernard were present and Frank was absent. There was attached a waiver of notice, but this was not signed. At this meeting a resolution was adopted authorizing the purchase of the assets of the partnership at a valuation of $231,800, and directing the president and secretary to issue 231,800 shares of stock to the former partners, proportionately. Those shares were promptly issued. A large amount of stock was also sold to other people. In August, 1948, Joseph Shure then issued 73,684 shares as "promotional stock" to himself and certain of his nominees, the certificates being signed by him as president and by his son as secretary.

In November, 1948, Shure was ousted as president and manager of the corporation and this action was brought by Bernard, as a stockholder and on behalf of the corporation, for an accounting and for cancellation of the 73,684 shares thus issued as "promotional stock." The corporation filed a cross-complaint, and the action was tried as one between the corporation and the cross-defendants.

So far as material here, the court found: that Shure caused 73,684 shares to be issued to himself and his nominees, of which 8,500 shares were issued to persons who had paid Shure for that stock; that no permit for the issuance and sale of this stock had been issued by the corporation commissioner of this state; that no consideration was paid to the corporation for any of said stock except by way of services rendered in the organization of the corporation; that this stock was issued by Shure "as his purported share of the promotional stock of said corporation"; that no other promotional stock has been issued; and that the issuance of the promotional stock was authorized by the board of directors. It was further found that at the time of the formation of the corporation the "organizers and promoters" agreed that promotional stock, when issued, would be issued to them in certain proportions; that by the terms of this agreement between the promoters Shure was entitled to only 29½ per cent of any promotional stock to be issued; that this 29½ per cent amounts to 68,387.85 shares; that Shure is entitled to retain 68,387.85 shares so issued, but is not entitled to retain the other 5,294.15 shares; and that the 68,387.85 shares were legally issued and were not issued in violation of any law of this state.

Judgment was entered accordingly and the corporation has appealed from that part of the judgment which adjudges that the cross-defendants are the owners of and are entitled to retain the 68,387.85 shares thus issued.

The appellant concedes that the rights of those who paid cash to Shure for 8,500 shares of the promotional stock should be protected, and states that if this stock is cancelled it will ask for a permit to issue new and valid stock to them without further consideration. It also concedes that Shure and the other promoters may eventually be entitled to some stock in return for their services, but insists that any such promotional stock should be validly issued in an amount that will be fair to the corporation and the cash-paying stockholders, and subject to restrictions deemed necessary by the corporation commissioner in order to protect all parties concerned.

The appellant contends that the findings are inconsistent and insufficient to support the judgment; that some findings are not supported by the evidence; that the issuance of this promotional stock was not properly authorized by the corporation; and that this stock was issued in violation of the Corporate Securities Act. The respondents contend that the

two issues, as to whether this stock was issued in violation of the Corporate Securities Act and whether its issuance was authorized by the board of directors, may not be considered on this appeal because the court's findings were contrary to appellant's contentions in this regard, and because the appellant did not question the "sufficiency of the findings." It is further contended that the evidence supports the findings that the stock was legally issued and that the issuance of the stock was authorized by the corporation. It is argued that the first of these findings is supported by the presumption that the law has been obeyed and by the testimony of Shure that he did not know where the promotional stock certificates were signed, and that he thought he was in San Diego at the time they were issued. It is argued that the finding that the issuance of the stock was authorized by the corporation is supported by the minutes of the directors' meeting held on June 30, 1948, in San Diego, in which it is stated that the directors agreed that, after shares were issued to pay for the partnership assets, a like amount of promotional stock should be issued.

The findings are somewhat unsatisfactory. It was found that no permit for the issuance of this stock was issued by the corporation commissioner of this state, but there was no finding as to where the stock was issued, or of any facts which would obviate the necessity for such a permit. The purported finding that these shares were legally issued is a conclusion, without any finding as to the basic facts. While it was found that the agreement between the "promoters" provided for the issuance of promotional stock to all of them, it was specifically found that no such stock was issued to anyone other than Shure. While it was found that the issuance of the promotional stock was authorized by the directors, there is no finding of facts showing their authority to so act, and no finding of any of the facts which would be essential to justify two of the three directors in adopting such a resolution for their own benefit.

In our opinion, the evidence is not sufficient to support the finding that the issuance of these shares was not in violation of any law of this state. The provisions of the Corporate Securities Act as then in force are now found in the Corporations Code, to which reference will be made. Section 25003 provides that the word "company" as used in that division shall apply to foreign corporations. Section 25500 provides that no company shall sell any security

of its own issue without a permit from the commissioner. Section 25009 defines the word "sell" in a manner which includes the transaction here in question. Section 26100 provides that every security of its own issue issued by any company without a permit of the commissioner is void.

█ Under varying sets of circumstances, similar to those which here appear, it has been frequently held that the law of this state making void the issuance of shares of stock without the required permit is applicable to the shares of a corporation organized under the laws of another state. (*Hardy* v. *Musicraft Records, Inc.,* 93 Cal.App.2d 698 [209 P.2d 839]; *B. C. Turf & Country Club, Ltd.* v. *Daugherty,* 94 Cal.App.2d 320 [210 P.2d 760]; *Gillis* v. *Pan American Western Petr. Co.,* 3 Cal.2d 249 [44 P.2d 311]; *Auslen* v. *Thompson,* 38 Cal.App.2d 204 [101 P.2d 136].) The case of *Kress* v. *Tooker-Jordan Corp.,* 103 Cal.App. 275 [284 P. 685], relied on by the respondents, is distinguishable on the facts and is in no way controlling.

While this corporation was organized in Nevada the promoters lived in California and were doing business here. At the organization meeting the original directors resigned and new directors were elected, all of whom lived in California, two of them being promoters of the corporation. The waiver of notice of the second meeting, which was entered in the minutes but never signed, referred to a special meeting to be held at the offices of the corporation in San Diego. That meeting was held in San Diego just two weeks after the organization meeting in Nevada. The only other meeting shown by the minutes was held in San Diego about two weeks later. The stock book and the books and other records of the corporation were kept in San Diego. It appears that the office of the corporation in this state was being used as the head office of the corporation, and the corporate affairs were being conducted in this state. If any other directors' meetings were held, they were held in California. Shure testified that the meetings of the directors were informal, that he would merely talk things over with Bernard, and that he would then have the minutes written up to show what they had done. Frank was never notified of any meeting of the board of directors, and he testified that he never attended a meeting; that he received no notice of any meeting; that he had no opportunity to vote or make any decision on any business pertaining to the corporation; and that he did not even know that he was a director until after

this action was filed. The respondents contend that the appellant failed to prove by a preponderance of the evidence that this promotional stock was issued in California, and rely on Shure's testimony that he could not remember where the shares were issued. While he testified to this effect, he also testified that he would have to refresh his memory before he could say where he was on the day the stock was issued. He was then asked whether he meant to tell the court that he did not know where he was on the day the stock was issued and he replied, "I think I was in San Diego." He also testified that the shares of stock were issued the day they were made out. The shares of stock in question are all dated in August, 1948, and it amply appears from other evidence that Shure was not in Nevada during that month. We can find no evidence in the record which would have supported a finding that these shares of stock were actually issued in Nevada, and it may be added that such a fact, standing alone, would not have been sufficient to make inapplicable the requirement for a permit for the issuance of this stock. (*B. C. Turf & Country Club, Ltd.* v. *Daugherty,* 94 Cal.App.2d 320 [210 P.2d 760].)

While the court found that at the time of the formation of the corporation the promoters agreed that promotional stock would later be issued, of which 29½ per cent should be issued to Shure or his nominees, it was not found that the corporation was a party to that agreement. The court's findings that the issuance of the promotional stock to Shure was authorized by the board of directors, and that these shares were legally issued, are not sustained by the evidence. The evidence shows that the agreement between the promoters, if a definite agreement can be said to have been made, was made several months before the corporation was formed; that there was no agreement for the issuance of such stock to one of the promoters alone; that Bernard, who is both a promoter and one of the directors, did not know until long afterwards that the stock had been issued; and that no director, other than Shure, knew of any intention to issue it at that time. The evidence conclusively shows that the meeting of the directors on June 30, 1948, at which the issuance of promotional stock was purportedly authorized, was not a regular meeting as provided for in the by-laws. The evidence shows without conflict that Frank had no notice of that meeting, and the other directors had no authority to hold such a meeting. Moreover, the other directors, Shure

926

and Bernard were acting in a fiduciary capacity. As such a fiduciary, Shure could not unite his personal and representative character in the same transaction, and could not use his official position to further his own interests and to benefit himself individually. (*Lawrence* v. *I. N. Parlier Estate Co.*, 15 Cal.2d 220 [100 P.2d 765]; *Dean* v. *Shingle*, 198 Cal. 652 [246 P. 1049, 46 A.L.R. 1156].) There was neither evidence nor findings of any facts showing that the action there taken was based upon a sufficient consideration, or upon a reasonable contract which was fair to the corporation or to the stockholders who had paid cash for their stock. A burden rests upon such a fiduciary to show that he has acted in good faith and that he is justly entitled to whatever he received. (*Tretheway* v. *Tretheway*, 16 Cal.2d 133 [104 P.2d 1033].) This burden was not met.

The unfairness of this transaction to the corporation, to its cash-paying stockholders, and even to the other promoters, is fully apparent. We think the illegality of the transaction, and the insufficiency of the evidence and the findings to support the judgment are equally apparent.

The judgment is reversed.

Griffin, J., and Mussell, J., concurred.