Louis M. D'ANTUONO

v.

CCH COMPUTAX SYSTEMS, INC.

Civ. A. No. 83–0447S.

United States District Court,
D. Rhode Island.

Sept. 19, 1983.

Everett A. Petronio and Thomas M. Petronio, Johnston, R.I., for plaintiff.

Edwards & Angell by Wm. P. Robinson, III, Patricia A.S. Zesk, Providence, R.I., for defendant.

1. Section 1404(a) provides:
   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

2. Section 1406(a) provides:

## OPINION

SELYA, District Judge.

This action was commenced in the state superior court and seasonably removed to this court pursuant to 28 U.S.C. § 1441. Jurisdiction is premised upon diversity of citizenship and the existence of a controversy in the requisite amount. 28 U.S.C. § 1332. The defendant has now moved to transfer venue to the United States District Court for the Southern District of California. While the motion is silent as to its statutory underpinnings, the court treats it as invoking the provisions of both 28 U.S.C. §§ 1404(a)[1] and 1406(a).[2]

The transfer motion is buttressed by the affidavit of James W. McNeill, defendant's chief executive officer. The objection to the motion is supported by plaintiff's counter-affidavit. All of the relevant contract documents are appended to these affidavits. The matter has been extravagantly briefed. Oral argument was heard on September 6, 1983.

The underlying facts are susceptible to succinct summary. D'Antuono, a Rhode Island certified public accountant, purchased a computer system, accessories therefor, and an assortment of related software from CCH Computax Systems, Inc., a California corporation ("Computax"). The transaction was limned by a series of instruments. The purchase arose in the following context. D'Antuono first talked with the defendant's sales representative in Rhode Island. Subsequent to the initial contact, the plaintiff attended a demonstration of the system in Boston, Massachusetts on November 18, 1982. On November 22, D'Antuono, in his offices in Johnston, Rhode Island, signed a preliminary purchase order (the "Offer") and tendered a deposit. The Offer was accepted on November 24 by an officer of Computax, presumably in California.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

While the Offer did not specifically contain a forum selection clause, it was, by its terms, "conditional upon customer's entering into applicable standard form purchase, program license, and-or supply agreements with seller". It is nowhere disputed that such "standard form" agreements, for the defendant's products, routinely incorporated such a covenant.

A few days later, the plaintiff sojourned to Norfolk, Virginia and participated in a week-long training seminar sponsored by defendant. While there, he entered into two purchase agreements, two ancillary supply contracts, and a program license agreement. These agreements were prepared by Computax, signed by D'Antuono in Virginia, sent to Computax in California, and inscribed there on the defendant's behalf. Each agreement contained the following clauses:[3]

> The laws of the State of California shall govern this Agreement.

> This Agreement shall be treated as though it were executed in the County of San Diego, State of California, and was to have been performed in the County of San Diego, State of California. Any action relating to this Agreement shall be instituted and prosecuted in the Courts of San Diego County, California. Customer specifically assents to extra-territorial service of process.

Subsequent to the striking of the bargain and the delivery and installation of the purchased items, the relationship between the parties eroded to the point where D'Antuono brought this suit. His complaint contains three statements of claim. The first count asserts breach of warranty and misrepresentation; the second count charges violations of the so-called "Deceptive Trade Practices Act," R.I.Gen.Laws §§ 6–13.1–1 et seq.; and the third count agglomerates the first two, topping off the resultant admixture with an assertion of entitlement to punitive damages. Thus, it is plain that this action is one "relating to" the serial

agreements; and therefore, if the forum selection clause quoted above is enforced, transfer of the case will ineluctably result.

A threshold question exists as to the statutory basis for the motion. As noted earlier, there are two provisions of the Judiciary Code which may arguably come into play. The federal courts have hop-scotched between these sections in weighing the effect of forum selection covenants. *Compare, e.g., Cutter v. Scott & Fetzer Co.*, 510 F.Supp. 905, 909 (E.D.Wis.1981) (28 U.S.C. § 1406(a) controls); *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 72–73 (S.D.N.Y.1978) (same); *with Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir.1973) (court, without discussion, assumes that 28 U.S.C. § 1404(a) governs); *Leasing Service Corp. v. Broetje*, 545 F.Supp. 362, 369–70 (S.D.N.Y.1982) (28 U.S.C. § 1404(a) controls). Some courts have avoided the question by acting simultaneously under both statutes, *e.g., Kline v. Kawai America Corp.*, 498 F.Supp. 868, 873 n. 5 (D.Minn.1980); others have acted without explicit reference to either statute, *e.g., Taylor v. Titan Midwest Construction Corp.*, 474 F.Supp. 145 (N.D.Tex.1979).

In this court's view, 28 U.S.C. § 1406(a) controls in such a case. That statute is to be invoked when venue is *improper, see Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79 (2d Cir.1978), as opposed to merely *inconvenient.* If the pre-litigation agreements between the parties are enforceable, then the plaintiff's choice of an inconsistent venue is simply *wrong* and should not be allowed to stand. *Hoffman v. Burroughs Corp.*, 571 F.Supp. 545 at 551 (N.D.Tex.1982). *See* C. Wright, A. Miller, and E. Cooper, *Federal Practice & Procedure* § 3847, at 237 (1976). Far more than naked "convenience" is involved; indeed, by consenting to the inclusion of a forum designation in the contracts, the plaintiff, to the extent that such a covenant is valid in a particular case, has waived any consideration of *his* convenience. *Full-Sight*

---

**3.** The Offer embodied no direct reference to choice of law or to venue selection. Each of the five later documents, however, contained a uniform set of printed conditions. Paragraphs 14(e) (choice of law) and 14(f) (venue selection) of these conditions are implicated here.

*Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. at 74.[4]

In that 28 U.S.C. § 1406(a) controls in the first instance, the issue becomes the validity of the forum selection clause. This inquiry requires, initially, a backward glance at precedent. Historically, such clauses were held in low repute in the federal courts as being of dubious validity in that they restrained resort to the courts. *E.g., Home Ins. Co. v. Morse,* 87 U.S. (20 Wall) 445, 451, 22 L.Ed. 365 (1874) (dictum). The *Morse* view, however, is now universally regarded as "outmoded". *Kolendo v. Jerell, Inc.,* 489 F.Supp. 983, 985 (S.D.W.Va.1980). The more enlightened perspective is that postulated by the Supreme Court a decade ago in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). While *Bremen* involved a suit in admiralty, its wisdom has been unhesitatingly applied in land-based diversity actions. *See In re Fireman's Fund Insurance Cos., Inc.,* 588 F.2d 93, 95 (5th Cir.1979); *Fireman's Fund American Insurance Companies v. Puerto Rican Forwarding Co., Inc.,* 492 F.2d 1294, 1296–97 (1st Cir.1974); *Richardson Engineering Co. v. International Business Machines Corp.,* 554 F.Supp. 467, 468–69 (D.Vt. 1981), *aff'd* 697 F.2d 296 (2d Cir.1982); *Kline v. Kawai America Corp.,* 498 F.Supp. at 871 n. 1. *See also St. Paul Fire & Marine Insurance Co., v. Travelers Indemnity Co.,* 401 F.Supp. 927, 929–30 (D.Mass.1975).

The *Bremen* rule is that, under federal common law, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances". 407 U.S. at 10, 92 S.Ct. at 1913. The recalcitrant party (here, the plaintiff) bears a heavy burden of proof in his attempt to demonstrate unreasonableness. *Id.* at 17, 92 S.Ct. at 1917. *Bremen* pointed to some of the exemplars of such a showing: "fraud or overreaching ... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought". *Id.* at 15, 92 S.Ct. at 1916. Lastly, the Court declared that "it should be incumbent on the party ... to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. at 1917. The First Circuit has stated the principle thusly: "To establish that a particular choice-of-forum clause is unreasonable, a resisting party must present evidence of fraud, undue influence, overweening bargaining power or ... serious inconvenience in litigating." *Puerto Rican Forwarding Co., Inc.,* 492 F.2d at 1297. The Ninth Circuit has echoed similar sentiments. *See Crown Beverage Co., Inc. v. Cerveceria Moctezuma, S.A.,* 663 F.2d 886, 888 (9th Cir.1981) (per curiam); *Republic International Corp. v. Amco Engineers, Inc.,* 516 F.2d 161, 168 (9th Cir.1975).

Nor can it be doubted but that federal—rather than state—law must in the first instance be applied to venue selection. The applicable venue statute, 28 U.S.C. § 1406(a), is, after all, a creature of the Congress; and it is deserving of a uniform national interpretation. The weight of respectable authority so holds. *See e.g., Northeast Theatre Corp. v. Edie & Ely Landau, Inc.,* 563 F.Supp. 833, 834–35 (D.Mass. 1983); *Hoffman v. Burroughs Corp.,* at 550; *Taylor v. Titan Midwest Construction Corp.,* 474 F.Supp. at 147. And, to the extent that Rhode Island law may be relevant to this inquiry, *cf. Kolendo v. Jerell, Inc.,* 489 F.Supp. at 985, there are no re-

4. Because § 1404(a) is governed largely by convenience, and pivots on a different fulcrum than § 1406(a), it has been observed that even the presence of a valid and enforceable forum selection clause does not estop a federal court in the contractually-appointed forum from ordering a convenience-type transfer to another district under § 1404(a). *Plum Tree, Inc. v. Stockment,* 488 F.2d at 757 & n. 6. The converse should hold equally true: even if the forum designation covenant is invalid, the action can still be transferred to the designated situs if application of conventional § 1404(a) criteria so dictates. Thus, although the initial judicial approach to a motion grounded upon a forum selection clause should, in the court's view, be by way of § 1406(a), an instant replay, under § 1404(a) standards, may well take place if it is eventually found that the clause relied on cannot be enforced.

ported cases directly on point, and no rational basis for the assumption that Rhode Island would not align itself with the weight of modern non-federal authority, e.g., *Board of Education v. W. Harley Miller, Inc.,* 221 S.E.2d 882 (W.Va.1975), and subscribe to the *Bremen* view.

■ Post-*Bremen,* the federal courts have synthesized and refined the rule, and have looked to a variety of factors in applying the *Bremen* yardstick of reasonableness. These include:

1. The identity of the law which governs the construction of the contract. *See, e.g., Furbee v. Vantage Press, Inc.,* 464 F.2d 835, 837 (D.C.Cir.1972).

2. The place of execution of the contract(s). *See, e.g., Leasewell, Ltd. v. Jake Shelton Ford, Inc.,* 423 F.Supp. 1011, 1015–16 (S.D.W.Va.1976).

3. The place where the transactions have been or are to be performed. *Id. See also Kline v. Kawai America Corp.,* 498 F.Supp. at 872.

4. The availability of remedies in the designated forum. *See, e.g., Hoffman v. Burroughs Corp.,* at 549; *Full-Sight Contact Lens Corp. v. Soft Lens, Inc.,* 466 F.Supp. at 73.

5. The public policy of the initial forum state (here, Rhode Island), *see, e.g., Hoffman v. Burroughs Corp.* at 549; *Cutter v. Scott & Fetzer Co.,* 510 F.Supp. at 908, a consideration perhaps uniquely applicable where, as here, federal jurisdiction is bottomed on diversity of citizenship.

6. The location of the parties, the convenience of prospective witnesses, and the accessibility of evidence. *See, e.g., Anastasi Brothers Corp. v. St. Paul Fire & Marine Insurance Co.,* 519 F.Supp. 862, 864 (E.D.Pa.1981).

7. The relative bargaining power of the parties and the circumstances surrounding their dealings. *See, e.g., Plum Tree, Inc. v. Stockment,* 488 F.2d at 757.

8. The presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances. *See, e.g., Cutter v. Scott & Fetzer Co.,* 510 F.Supp. at 907.

9. The conduct of the parties. *See, e.g., Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. at 73; *Gaskin v. Stumm Handel GmbH,* 390 F.Supp. 361, 365 (S.D.N.Y.1975).

■ While each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formulae. The totality of the circumstances, measured in the interests of justice, will—and should—ultimately control. In the end, the party seeking to avoid the strictures of the forum selection clause must convince the court of the reality of "a set of qualitative factual circumstances warranting denial of enforcement." *Kolendo v. Jerell, Inc.,* 489 F.Supp. at 985.

■ The first quartet of factors are cast in a traditional contract mold. By the terms of the agreements here before the court, California law will govern the construction and interpretation of the contract provisions.[5] The agreements (except for the Offer) were signed by the plaintiff in Virginia and by the defendant in California; but, given the choice-of-law provision, it appears clear that, under California law, the place where the last necessary signature was affixed (in this instance, California) is deemed to be the place of execution. *Hardy v. Musicraft Records,* 93 Cal.App.2d 698, 709, 209 P.2d 839 (1949). While Computax lays claim to its domiciliary state as the place of performance in that the design, development and servicing of the software took place there, that boast is on shaky ground: the goods were obtained for use by D'Antuono in Rhode Island, to service Rhode Island clients. They were utilized in that fashion. Thus, while California has

---

5. There is nothing to indicate that California's relationship to the transaction is so peripheral, contrived or remote as to render nugatory the parties' choice of law. Thus, gauged either by Rhode Island's statutory imperative, R.I.Gen. Laws § 6A–1–105, or by pre-existing common law rules, e.g., *Owens v. Hagenbeck-Wallace Shows Co.,* 58 R.I. 162, 173, 192 A. 158 (1937), the agreement to apply that law is both appropriate and binding upon the parties.

some involvement with performance, its contacts are not as direct, substantial or significant as those enjoyed by Rhode Island. Availability of remedies seems to be only a paper factor in this situation. A federal court sitting in diversity jurisdiction in either state would be adequately equipped to afford relief; and there is no reason to suspect that some idiosyncratic anodyne is available to the plaintiff in this forum which will be foreclosed to him in more westerly climes. Thus, the grouping of conventional contract factors, taken as a whole, fails to suggest any meaningful element of "unreasonableness" sufficient to inhibit operation of the forum selection stipulation.

Nor can it be said that Rhode Island has evinced a strong public policy adequate to block the proposed transfer. Because of the consensual choice-of-law provisions contained in the contracts (which provisions, it should be reiterated, themselves comport with the policy considerations articulated both by the Rhode Island General Assembly, R.I.Gen.Laws § 6A–1–105, and by the state courts, *e.g., Owens v. Hagenbeck-Wallace Shows Co., supra* ), Rhode Island law is, in all events, likely to be inapposite. Moreover, this case is not one which is inextricably enveloped within the integument of a state-enacted statutory scheme, *e.g., Cutter v. Scott & Fetzer Co., supra* (action by distributor against manufacturer controlled by Wisconsin's Fair Dealership Act). To the extent (if at all) that the Rhode Island Deceptive Trade Practices Act, R.I.Gen. Laws §§ 6–13.1–1 *et seq.,* may be implicated, there is scant reason to suspect that a transferee court would be seriously disadvantaged in dealing with that statute (given, especially; the relatively recent origins of that Act and the comparative dearth of decisional law thereunder). Plaintiff, a sophisticated professional man, is in any case not the ordinary unwary customer for whose benefit the Act was adopted. *Cf. Hoffman v. Burroughs Corp.,* at 550. Plaintiff makes his public policy argument in forceful rhetoric (*see, e.g.,* Plaintiff's Memorandum at 15–16), but it is all conclusory sound and fury; not a single citation

of authority is proffered. The court concludes, accordingly, that there is no meaningful public policy obstacle thwarting the proposed shifting of venue to California.

The next point is the sifting of convenience factors so typical of venue decisions. In this vein, plaintiff relies heavily on cases involving motions brought under 28 U.S.C. § 1404(a) in the absence of forum selection stipulations. Plaintiff's Memorandum at 11–13. But, there is a difference here. The better-reasoned view is that the plaintiff, by consenting to inclusion of the forum designation in the agreements, has in effect subordinated his convenience to the bargain. *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 344 (3d Cir. 1966); *Kline v. Kawai America Corp.,* 498 F.Supp. at 872; *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. at 73–74. True, D'Antuono will have to travel to the west coast for trial in the chosen forum; but such a journey was apparently within the contemplation of the parties when the bargain was struck. "Plaintiff cannot be heard to complain about inconveniences resulting from an agreement [he] freely entered into". *Id.* at 74.

Nevertheless, this is not entirely dispositive of the issue. While the parties to a contract can negotiate away their own ease, the location of third-party evidence and the convenience of witnesses deserves independent consideration. D'Antuono identifies three witnesses who would have easier access to a Rhode Island forum; as appears from the documents supporting the motion, however, just the opposite is true not only of Computax employees but of its consultants, sub-contractors and vendors. And, the bulk of the relevant documentation is apparently on the west coast. While maintenance of the action in his own back yard would plainly be less difficult for the plaintiff, there is no compelling reason to assume that a transfer to the designated venue will *de facto* deprive D'Antuono of his day in court. On balance, neither forum is wholly convenient; indeed, each appears inconvenient to some degree. Any advantage which D'Antuono can claim for Rhode Island on

this score is marginal at best. There is no perfect solution to such an impasse (short, perhaps, of trying the case in Kansas). It is simply a question of whose ox is to be gored: and it is precisely in this sort of situation that a forum selection clause can and should tip the scales.

The final trio of factors can be discussed in unitary fashion. These deal with the intricacies of the relationship between the parties and their conduct vis-a-vis each other. While it is fair to assume that Computax, purveying a desirable product nation-wide, possessed superior bargaining power, the disparity is not shocking. D'Antuono is by no stretch of the imagination a babe in the commercial woods. The agreements were on forms which originated with Computax; and it is well settled that the existence of boilerplate contracts should give a reviewing court pause. *Cf. Kline v. Kawai America Corp.,* 498 F.Supp. at 872. Yet, nothing in the record suggests that any coercion was brought to bear by the purveyor, or that the customer was grudgingly forced to accede to a forum designation demand. D'Antuono, in his affidavit, carefully skirts any claim of coercion or duress; he does indicate that he would have preferred to review the agreements with counsel before signing—but he nowhere suggests that he communicated this sentiment to Computax, or that the defendant foreclosed this option. His principal contention on this point seems to be that he would not have contracted for the purchase had he realized that his sole litigation remedy was in a California forum. D'Antuono Affidavit, ¶ 8. But, the clause was easily readable and not difficult to comprehend[6]; and each contract contained in bold print the following statement:

"CUSTOMER ACKNOWLEDGES BY ITS (SIC) SIGNATURE THAT IT (SIC) HAS READ AND UNDERSTANDS THIS AGREEMENT."

At bottom, D'Antuono's argument, while admittedly made with much gnashing of teeth, is that he either did not read or did not appreciate the significance of the clause which he now attacks. Yet, the acknowledgement quoted above speaks in a contrary tongue; and plaintiff's claim of total nescience is more difficult to credit given the five-fold repetition of the exercise. Passing these points, however, the law is settled that, as a general rule, "a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents." *F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515, 518 (R.I.1981). As Justice Cardozo observed some sixty years ago, one "who omits to read takes the risk of the omission." *Murray v. Cunard S.S. Co., Ltd.,* 235 N.Y. 162, 166, 139 N.E. 226, 228 (1923). Were it otherwise, signed contracts would be little more than scraps of paper, subject to the selective recollection of the parties in interest. Thus, in *Richardson Engineering Co. v. International Business Machines Corp., supra,* where a venue designation was contained in a general contract (to which the plaintiff was not a party) which was in turn incorporated by reference in a subcontract (to which the plaintiff was a party), the plaintiff's assertion that "it did not read or even see the general contract until after it signed the subcontract," 554 F.Supp. at 469, was deservedly given short shrift by the court.

This black-letter law is particularly telling in the case at bar, as the record makes manifest the importance of the clause in the every-day operation of Computax's business. The defendant's filings offer sound—and unimpeached—reasons to support its inclusion in the contracts. From the defendant's viewpoint, the stipulation was a critical element of the bargain. McNeill Affidavit, ¶ 6. Computax does business throughout the country, and had a legitimate stake in not being required to defend

---

6. Each agreement was no more than two pages in length, and the disputed covenant was in plain language; case law teaches that such factors enhance the viability of the clause.

*Hoffman v. Burroughs Corp.,* at 549; *Kline v. Kawai America Corp.,* 498 F.Supp. at 872; *cf. Bense v. Interstate Battery System,* 683 F.2d 718, 722 (2d Cir.1982).

lawsuits in far-flung fora. *See Northeast Theatre Corp. v. Edie & Ely Landau, Inc.,* 563 F.Supp. at 835. And, the defendant has proffered nothing of substance to rebut the inference that, at least by implication, this covenant was factored into the price and terms of the overall arrangement.

■ The infrastructure of the plaintiff's lead argument against enforceability of the forum selection clause is that, since the contracts were allegedly induced by fraudulent misrepresentation as to the capacity and proficiency of the computer system, they are voidable. Building upon this foundation, D'Antuono's capstone is that, since the contracts should be invalidated, all parts thereof—including the choice of forum language—must likewise fall. But, the complaint is brought for money damages, not for rescission of the agreements.[7] Further, the inducement contention blithely ignores both the disclaimers common to all five contracts (disavowing, *inter alia,* "prior communications", "oral statements" and the like) and the merger language. Given the scenario at bar, plaintiff's reliance on *Halpert v. Rosenthal,* 107 R.I. 406, 412, 267 A.2d 730, 733 (1970), which involved an executory purchase-and-sale agreement for real estate, seems totally misplaced.

Most important, D'Antuono does not contend that the forum designation clause itself was procured by fraud, chicanery or overreaching. Just as fraud in the inducement of a contract containing an arbitration clause[8] is insufficient to sidetrack arbitration absent a showing that *the clause itself* was impermissibly obtained, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270 (1967), so too, misrepresentation in the procurement of a contract is not, standing alone, a basis on which a forum selection covenant contained therein can *ipso facto* be invalidated. *Giordano v. Witzer,* 558 F.Supp. 1261, 1264–65 (E.D.Pa. 1983). *Cf. Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1170 (6th Cir.1972).

Similarly, while the plaintiff's complaint alleges product-oriented deceit and misrepresentation, those allegations are immaterial to the issue at bar: *Bremen's* allusions to fraud as a ground for avoiding the implementation of a forum selection covenant do not refer to monkeyshines in the carrying-out of the transaction, but only to whether "the inclusion of [the forum selection] clause in the contract was the product of fraud." *Scherk v. Alberto-Culver Co.,* 417 U.S. 519 at n. 14, 94 S.Ct. 2457 at n. 14.

In sum, a careful balancing of all of the relevant factors fails to demonstrate that the forum selection agreed upon by these parties is unfair, unreasonable or even significantly inappropriate. D'Antuono has fallen far short, on these facts, of carrying his *Bremen* burden. This court, like the *Hoffman* court on virtually identical facts, is constrained to hold that the forum selection clause is valid; it must be enforced according to its tenor.

Since the defendant has moved to transfer rather than to dismiss the action, and

---

**7.** Counsel for the plaintiff indicated at oral argument that he was contemplating amendment of the complaint to ask for rescission. Since the defendant has not yet joined issue on the merits, plaintiff could unilaterally have amended the complaint at any time by a simple filing. Yet, he has not done so. He apparently prefers to await the court's decision, and then to essay a second bite at the apple. Judge Breyer, writing for a unanimous panel, has etched the First Circuit's view of such tactics:

"To require the district court to permit amendment here would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's decision. Such a practice would dramatically undermine the ordinary rules governing the finality of judicial decisions, and should not be sanctioned in the absence of compelling circumstances." *James v. Watt,* 716 F.2d 71, 78 (1st Cir.1983).

In any event, there is no reason to believe either that (i) the inclusion of a rescission count would be issue-determinative on the instant motion, or (ii) if a motion to amend is subsequently brought, the proposed transferee court would be disadvantaged in passing upon it.

**8.** The Supreme Court has described an arbitration clause as "in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974).

since it would seem compatible with the interests of justice that the plaintiff be spared the expense of reinstituting the litigation, the action is appropriate for transfer to the United States District Court for the Southern District of California. Nevertheless, the choice between the alternative dispositions permitted under 28 U.S.C. § 1406(a) (dismissal versus transfer) ought to be, in the circumstances at bar, the option of the plaintiff. If D'Antuono (for tactical reasons or to facilitate an immediate appeal of this ruling or otherwise) would prefer dismissal as opposed to the indicated transfer, then his wishes should govern. Accordingly, the court will order that this action be dismissed without prejudice unless the plaintiff, within ten days from the date hereof, files in the clerk's office a notice of assent to transfer (in which such event, the action shall be transferred as aforedescribed).

Counsel for the defendant shall prepare and present for entry a form of order consonant with the foregoing.