DECISION
The matter is before the Court on defendant America Online, Inc.'s Motion to Dismiss plaintiffs Complaint[1] on the grounds of improper venue pursuant to Rules of Civil Procedure, (R.C.P) Rule 12 (b) (3).
FACTS:
According to plaintiff's Complaint, defendant is a "[V]irginia Company" that operates an "on-line" computer service which allows plaintiff "to access and receive information via his personal computer, including access to the Internet, so-called."
Initially, individuals receiving that service were provided, for a set fee, a limited maximum number of hours and were charged additionally for time "on line" beyond the limited maximum. Thereafter, defendant initiated a "flat fee" which allowed for unlimited hours "on line."
The gravamen of plaintiff's complaint is, at the time he accepted defendant's offer for unlimited service, defendant knew they were unable to provide the service and said actions were in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I.G.L. (1956) 6-13.1-1, et seq.
Before this action was filed, January 21, 1997, a similar action had been certified as a class consisting of "all AOL subscribers who were subscribers to AOL on December 1, 1996 or who became subscribers on said date or thereafter" in the Circuit Court, Cook County (Il.) entitled Schwab. et al. vs. AmericaOnline. Inc., No. 96 CH 13732. Although plaintiff could have been a member of the class, he "opted out" of the Schwab class, July 25, 1997, prior to the effective date for class inclusion, October 2, 1997.
Additionally, similar actions entitled Pollock vs. AmericaOnline, C.A. No. 97-109A, Snyder vs. America Online, C.A. No. 97-110A and New Century Communications vs. America Online, C.A. 97-444A were pending before the United States District Court, Eastern District of Virginia (Alexandria Division), as well as litigation in other jurisdictions.
Defendant, after initially filing its Motion to Dismiss pursuant to Rules of Civil Procedure (R.C.P.) 12 (b)(1), (b)(2), (b)(3) and (b)(6), narrowed its argument to the motion pursuant to R.C.P. 12 (b)(3), improper venue, and argued that either the forum selection clause in defendant's contract with its members, including plaintiff, or the policy of forum non conveniens
requires that this action must be litigated in Virginia.
In support of its Motion, defendant submitted the affidavit dated October 9, 1997 of Randell J. Boe, Assistant General Counsel for defendant, together with an exhibit (Exhibit 1) entitled "Quick Reference Guide — America OnLine 3.0 For Windows 95" consisting of ninety-four (94) pages showing "(. . .each screen in order that the member sees and interacts with it immediately upon loading the software.)" (paragraph no. 3).
The affidavit outlines the process each subscriber must follow. The affidavit asserts in paragraph 7 after reading the Terms of Service (TOS) ". . . the user is unable to proceed onto the AOL system or become an AOL member without affirmatively choosing to accept the TOS. The user has the option of clicking `I Agree' or `I Disagree' after reading the TOS." (Exhibit 1 at page 79).
The affidavit states in paragraph 8 "[T]he TOS contains a forum selection clause which expressly provides that Virginia law and Virginia courts are the appropriate law and forum for the litigation between members and AOL" (Exhibit 1 at page 59).
Plaintiff, in his affidavit dated October 6, 1997, stated in part that "he never saw, read, negotiated for or knowingly agreed to be bound by the choice of law or forum selection clause . . . ." (Paragraph 7).
DISCUSSION:
As a threshold matter, the Court must decide if given the nature of defendant's motion, it may consider the affidavits without converting the motion to one of summary judgment. Our Supreme Court has held that a trial court, when deciding a preliminary jurisdictional motion which does not reach the merits of the issue at hand, may consider matters outside the pleadings, such as an affidavit, without treating the matters as a summary judgment motion under Rule 56 of the Rules of Civil Procedure.Almeida vs. Radovsky, 506 A.2d 1373, 1376 (R.I. 1986).
As with the defendant in Almeida, defendant here is not seeking a decision on the merits of plaintiffs claim. Rather it is arguing that this Court should refrain from exercising its jurisdiction over this matter based upon the terms of the contract. Plaintiff, while disagreeing with most of the arguments raised by defendant, does not challenge the propriety of defendant submitting its affidavit or its use in resolving the issue. Instead, plaintiff submits his own for the court's consideration.
By statute, R.I.G.L. 6-13.1-5.2, the General Assembly has authorized a private right of action for alleged deceptive trade practices involving ". . .personal, family or household purposes . . . ." Subsection (a) provides that the action may be brought ". . . in the Superior Court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business, or in the Superior Court of the county as is otherwise provided by law . . ."
Defendant does not deny that, at a minimum, it is ". . . doing business" within Providence County. As such, absent other policy interest, venue in this matter is proper and defendant's motion should be denied.
Defendant argues that either the "forum selection clause" contained in its terms of service membership agreement or the doctrine of forum non-conveniens requires this action be dismissed in Rhode Island. Plaintiff argues alternatively: (1) that the actions he complains of occurred before the contract became operative and therefore, the Court is not bound to accept the contract, (2) that transfer of a matter based upon improper venue between District Courts of the United States is expressly authorized in Title 28, Section 1404(a) of the United States Code, and is not authorized by statute in Rhode Island, (3) lastly that the policy of forum non conveniens has not been addressed by the Rhode Island Supreme Court and this Court should not dismiss the matter on this ground.
I. "PRECONTRACT"
Addressing first plaintiff's argument that his action relates to "precontract" activity, thus the terms of the contract should not apply. Plaintiff relies principally on the Supreme Judicial Court decision Jacobson vs. Mailboxes. Etc. USA, Inc.,646 N.E.2d 741 (Mass. 1995) vacating and remanding for further consideration a trial court's denial of a summary judgment motion by a defendant, where the trial court concluded that Massachusetts would not enforce a forum selection clause. In Jacobson, the Appellate Court attempted to predict how the courts of the forum state (California) under the terms of the agreement would interpret the clause as it applied to a preliminary showing by plaintiff of misrepresentation or fraud before the contract became operative.
It is clear from an objective reading of Jacobson that the Court was attempting to predict the law of California and that its holding should be limited to the facts there present, which although persuasive, is not binding upon this Court.
Further, to accept plaintiff's arguments would require this Court to go beyond that which is necessary to decide a jurisdictional question and reach the merits of the respective claims which is inappropriate given the limited nature of the motion before the Court.
II. IMPROPER VENUE
Historically, courts have looked with disfavor upon forum selection clauses on the basis that such clauses were contrary to public policy or had the effect of ousting proper jurisdiction from a court. However, in M/S Bremen vs. Zapata Off-ShoreCompany, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed 2d 513 (1972), the United States Supreme Court held in reversing and remanding the matter for further consideration, that such forum selection clauses were "prima facie valid . . ." which should be upheld unless it is shown to be "unreasonable" by the resisting party under the circumstances. 407 U.S. at 10, S.Ct. at 1913. That court went further to explain that where a contract is ". . . unaffected by fraud, undue influence or overweening bargain power . . ." the contract should be given its full effect.
Under the test enunciated in M/S Bremen, the party resisting the motion bears a heavy burden of proof in his attempt to demonstrate unreasonableness. 407 U.S. at 17, 92 S.Ct. 15, 1917.
After M/S Bremen was decided, numerous Circuit Courts applied factors in determining if a forum selection clause was unreasonable. Locally, then District Judge (now Circuit Judge) Selya upheld a forum selection clause between defendant (a California corporation) and plaintiff (a Rhode Island resident) seeking recovery, in part, under the same legal theory and statutory basis as here, R.I.G.L. 6-13.1-5.2, transferring plaintiff's action to California in D'Antuano vs. CCH ComputaxSystem, Inc., 570 F. Supp. 708 (D.R.I. 1983).
Judge Selya analyzed nine factors which other Federal Courts have examined in applying the reasonableness of enforcing a forum selection clause, those being:
1. identity of the law that governs the construction of the contract;
2. place of execution of contract;
3. place where transactions are to be performed;
4. availability of remedies in the designated forum;
5. public policy of the initial forum state;
6. location of the parties, the convenience of the prospective witnesses, and the accessibility of evidence;
7. relative bargaining power of the parties and the circumstances surrounding their dealings;
8. presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances; and
9. the conduct of the parties.
Judge Selya wrote further "[W]hile each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formula. The totality of the circumstances, measured in the interests of justice will and should ultimately control." 570 F. Supp. at 712.
Applying the above factors to this matter, under the terms of the agreement (Exhibit 1, page 59), "[T]he laws of the Commonwealth of Virginia, excluding its conflicts-of-law rules, govern the TOS and your membership." It is not clear, in this electronic age, where the last place the contract was executed. Was it when plaintiff clicked the "I agree" button (Exhibit 1, page 33) in Rhode Island or where that message was received, at defendant's mainframe in Virginia? The place where the transaction has been or are to be performed appears to take place where defendant's mainframe is located. Given the burden imposed upon plaintiff, this Court is not satisfied that the contract was executed in Rhode Island, or to be performed in Rhode Island.
As to the availability of a remedy, if this matter were brought in Virginia, the Virginia Legislature has enacted the "Virginia Consumer Protection Act of 1977, (1977, c. 635) which authorizes a private right of action and permits recovery of ". . . actual damages, or $500.00, whichever is greater," unless it is found that the violation was willful which would permit treble damages or ". . . $1,000.00, whichever is greater." § 59.1-204 Virginia Consumer Protection Act of 1977 (1977 c. 635). Unlike one concern raised in Jacobson as to whether plaintiff's action could be barred based upon the statute of limitations having run, it does not appear that plaintiff would be prevented from commencing and pursuing his action against defendant for that reason. § 59.1-204.2. Virginia Consumer Protection Act of 1977 (as amended 1988 c. 241, 1995 cc. 703, 726).
While no one can seriously argue that the public policy of Rhode Island to provide a remedy for its citizens is not an important one, it is at least of equal, if not greater importance, that parties to a contract who select Rhode Island as the forum that agreement should be enforced by other jurisdictions. Indeed as the Uniform Commercial Code, applicable in Rhode Island provides in part ". . . when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." R.I.G.L. 6A-1-105.
With the exception of plaintiff, it would appear that all the remaining parties, and evidence is in Virginia. This makes access to evidence, compulsory process of witness, views if necessary, more convenient.
Additionally, plaintiff cannot claim that he is uninformed in the area of contract law. Plaintiff, as pointed out by defendant (supplement memorandum page 10), has been at the bar in this state for approximately thirty (30) years. In Moretti PerlowLaw Office vs. Aleet Associates, 668 F. Supp. 103, 107 (D.R.I. 1987), where plaintiff was resisting his complaint being transferred from Rhode Island to New York under a forum selection clause in the agreement the court observed, "[W]ith respect to overweening bargaining power (plaintiff) is an experienced Rhode Island attorney well-versed in the rudiments of contract law. If he did not read and understand the motor vehicle lease in question, he surely should have done so."
While defendant prepared this contract, plaintiff was under no obligation to agree to the terms. Plaintiff had the option to refuse the service and the contract offered by plaintiff Although plaintiff, in his affidavit, states "I never saw, read, negotiated for or knowingly agreed to be bound by the choice of law . . ." he does not point to any conduct of defendant or other reason why he could not. Indeed as pointed out in defendant's affidavit and argued in his memorandum, one could not enroll unless they clicked the "I agree" button which was immediately next to the "read now" button (Exhibit 1, page 33) or, finally, the "I agree" button next to the "I disagree" button at the conclusion of the agreement (Exhibit 1, page 79).
In McKendall Lumber Co. vs. Kalian, 425 A.2d 515 (R.I. 1981), where the facts disclosed an agent for defendant purchased and signed a sales slips upon receipt which called for interest, defendant at trial argued that he was not bound to the terms. Our Court, at 518, stated the general rule that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents. Here, plaintiff effectively "signed" the agreement by clicking "I agree" not once but twice. Under these circumstances, he should not be heard to complain that he did not see, read, etc. and is bound to the terms of his agreement.
Plaintiff correctly maintains that under M/S Bremen "(a) forum selection clause should not be enforced where it is invalid because of fraud." Plaintiff's argument is that his action is commenced under the Unfair Trade Practice and Consumer Protection Act that is to say making a material misrepresentation that defrauded him which would support a common-law action for deceit. Here, as was pointed out by Judge Selya in D'Antuono, the complaint is brought for money damages (and other statutory relief) not for rescission, nor does the plaintiff claim that the forum selection clause was the result of fraud.
Lastly, as to the conduct of the parties, clearly plaintiff had the option not to accept defendant's terms. He did not. He chose to go on line.
III. FORUM NON CONVENIENS
Although neither party has referred to any decision from the Supreme Court of Rhode Island, that Court has held that when the Rhode Island Rules of Civil Procedure and Rhode Island case law are silent, it is allowable to refer to the body of law that has addressed the question, particularly the Federal Rules of Civil Procedure which formed the basis of our rules. Ciunci Inc. vs.Logan, 652, A.2d 961, 962 (R.I. 1995).
"[T]he principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Gulf Oil Corporation vs. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 639, 842 (1947). See Wright, Miller Cooper, Federal Practice and Procedure: Vol. 15 Jurisdiction 2d § 3828, page 288-89 (1986).
The Court in Gulf Oil, recognizing that it would be difficult to state a generalized rule for lower courts to follow, identified two interest, the private interest[2] affecting the convenience of the litigants versus the public interest[3]
convenience to be considered in deciding the issue.
Generally, a plaintiffs choice of forum is entitled to great weight and should be disturbed only in exceptional circumstances.Elbalah vs. Republic Ins. Co., 879 F. Supp. 3, 4 (D.R.I. 1995);Blinzee vs. Marriott International, Inc., 857 F. Supp. 1, 3 (D.R.I. 1994) other citations omitted.
In analyzing the "private interest factors", all of them weigh in favor of this matter as it presently stands being tried in Virginia.
CONCLUSION
Based upon the controlling principals, plaintiff has the burden of persuading the Court that the forum selection clause in his agreement with defendant was unreasonable. For the reasons stated, this Court is not satisfied that plaintiff has met his burden. Defendant's Motion to Dismiss based upon improper venue is granted.
Counsel for the prevailing party shall submit an Order consistent with this Decision.
[1] Plaintiff has filed this purported class action on behalf of himself and "on behalf of all others similarly situated." This Court has not ruled on whether or not this matter may proceed as a class action, and if it may, who may constitute the class.
[2] Of private interest factors to be considered for (a) relative ease of access to sources of proof; (b) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if viewed would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
[3] Factors of public interest to be considered (a) administrative difficulties for courts where litigation is piled up in congested centers instead of being handled at its origin, (b) burden of jury duty upon a community having no relationship to litigation; (c) local interest in having localized controversies decided at home.