Ronald D. RUSSO,. Plaintiff,

v.

**BALLARD MEDICAL PRODUCTS,**
Kimberly–Clark Worldwide, Inc., and
Kimberly–Clark Corporation, Defendants.

C.A. No. 03–519L.

United States District Court,
D. Rhode Island.

Jan. 10, 2005.

Joseph A. Kelly, Esq., Carroll, Kelly &
Murphy, Providence, RI, for Plaintiff.

Mark A. Pogue, Esq., Edwards & Angell, Providence, RI, for Defendants.

*DECISION AND ORDER*

LAGUEUX, Senior District Judge.

This matter comes before the Court on the motion of Defendants Ballard Medical Products, Kimberly–Clark Worldwide, Inc., and Kimberly–Clark Corporation (collectively "Defendants") to dismiss the Complaint for improper venue and failure to state a claim upon which relief can be granted.[1] The issue at the heart of this matter, is whether the forum selection clause contained in a Confidential Disclosure Agreement ("Agreement") between Russo ("Plaintiff") and Defendant Ballard Medical Products ("Ballard"), requires the venue of Russo's theft of idea complaint to be Salt Lake City, Utah. Upon review of the parties' arguments, and in light of the factual circumstances as they are alleged in the pleadings, this Court concludes that the forum selection clause contained in the Agreement does indeed apply to Russo's claim, is reasonable and should be enforced. Therefore, in the interest of justice and for the reasons set-forth below, this Court hereby transfers this matter to the Unites States District Court, for the District of Utah, pursuant to 28 U.S.C. § 1406(a)[2].

*BACKGROUND*

For purposes of this decision and order alone, the facts, as alleged by the parties in the pleadings are as follows: Plaintiff is a medical design consultant engaged in the business of designing medical devices for use by medical professionals and hospitals. Ballard is a maker of medical devices, based and incorporated in Draper, Utah while the Kimberley–Clark defendants, also medical device manufacturers, who are involved in this action as successors to Ballard[3], are incorporated in Delaware and have principal places of business in Wisconsin and Georgia.

On August 1, 1996, Plaintiff filed an application in the United States Patent Office on a medical device, specifically, a two-part closed tracheal suction system. The system was ultimately patented as patent number 5,775,325 (the " '325 patent"). The system was apparently quite innovative and provided for a closed method of introducing a suction tube (for removal of mucous from the airways of assisted-breathing patients) through the endotracheal tube into the bronchial area so as to keep the patient's airways clear. The design was unique in that it permitted the extended use of the system beyond the twenty-four-hour use limit of existing commercially available closed tracheal suction systems.

According to the Complaint, prior to issuance of the '325 patent, Plaintiff contacted Ballard for the purposes of having it evaluate the potential commercialization of his invention. Toward this end, Plaintiff disclosed certain confidential information to Ballard, subject to the terms of the Agreement. The Agreement defines confidential information as

1. The Motion to Dismiss also contains argument that this Court lacks personal jurisdiction over Defendants. Defendants have since withdrawn this claim; it is therefore no longer before this Court and is not a part of this decision.

Because this Court has concluded that transfer is the most appropriate remedy, Defendants' 12(b)(6) motion is not the subject of this ruling.

2. Section 1406(a)(2004) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, *or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.* (Emphasis added).

3. According to Plaintiff, the Kimberley–Clark defendants are liable because the patent at issue was assigned to them via their 1999 acquisition of Ballard. Defendants dispute this allegation.

" . . . all disclosures of information relating to the Inventions furnished to Ballard by Russo which are disclosed in a tangible medium of expression and marked 'confidential', with the exception of the following:

(a) information that is now in the public domain or subsequently enters public domain without fault on Ballard's part;

(b) information that is already known to Ballard or in Ballard's lawful possession or independently developed by Ballard; and

(c) information that Ballard lawfully receives from any third party not known or reasonably expected to be under a legal obligation to Russo to keep such information confidential.

The Agreement further requires that Ballard destroy all confidential information that Plaintiff supplied to it within sixty days of the date of the Agreement. Most importantly to the instant motion, the Agreement specifies that "[a]ny action under this Agreement may be filed and maintained only in state or federal courts located within Salt Lake County, State of Utah, and all parties hereby submit to the jurisdiction of such courts."

In late April, 1998, subsequent to signing the Agreement, Plaintiff met with representatives of Ballard in New York City. At that meeting, in explaining his device to Ballard's representatives, Plaintiff presented them with three drawings outlining the specific details and advantages of the '325 patent. In response to questions from Ballard's representatives, Plaintiff produced a fourth drawing which was a redraft of the same device showing an additional catheter wiper and an aperture in the valve to improve catheter cleaning. The Ballard representatives inquired as to whether the improvements shown and described in the fourth drawing were part of

the '325 patent and Plaintiff responded that they were not. Ballard's representatives asked for and received a copy of the fourth drawing.

The negotiations between Plaintiff and Ballard eventually broke down, and did not result in a licensing agreement between the parties. On September 21, 1998, Ballard filed a U.S. patent application number 09/157/605 on a closed tracheal suction catheter apparatus. The application and accompanying materials failed to disclose Plaintiff's '325 patent. Ballard's initial patent application was rejected, but it filed a subsequent application, numbered 09/357/591 and entitled "Continuation in part of application 09/157/605 filed on September 21, 1998". Ballard's second application was successful, and patent number 6,227,200 (the " '200 patent")was issued to Ballard on May 8, 2001.

Plaintiff alleges that Ballard improperly incorporated information that he disclosed at the April 1998 meeting into Ballard's own patent applications eventually resulting in the acquisition of the '200 patent. Plaintiff notes that Ballard's successful application also failed to identify the '325 patent as prior art, and failed to credit Plaintiff for information that was included as part of the '200 patent application.

Plaintiff filed suit against Ballard on October 23, 2003, in Rhode Island Superior Court for (1) breach of implied covenant of good faith and fair dealing; (2) promissory estoppel; (3) unjust enrichment; (4) unlawful conversion, and; (5) violations of the Rhode Island Trade Secret Act [4]. The case was removed to this Court.

## VENUE

Defendants contend that the Complaint must be dismissed or the case transferred because the parties had previously con-

**4.** Rhode Island General Laws §§ 6–41–1—6– 41–11 (1956), as amended (2004).

tracted to resolve any disputes between them, arising out of the Agreement, in Salt Lake County, Utah. Plaintiff claims, however, that the subject matter of this dispute does not fall within the scope of the Governing Law (forum selection) clause of the Agreement.

### (1) *Subject Matter of Dispute*

■ To enforce a forum selection clause, a court must first determine that the subject matter of the dispute is one that is contemplated under the applicable clause. *Pascalides v. Irwin Yacht Sales North, Inc.*, 118 F.R.D. 298, 301–301 (D.R.I.1988). In the instant matter, Plaintiff asserts that by its nature, the disagreement is not encompassed within the language of the forum selection clause. Indeed, Plaintiff argues that: (1) the Agreement ceased to apply once the Two Part Closed Tracheal Suction System was patented and the '325 patent issued; (2) drawings one through four had not been created when the Agreement was signed, and, therefore, were not intended to fall within the purview of the Agreement, and; (3) the additional (fourth) drawing given to Ballard by Plaintiff at the meeting does not fall within the definition of "inventions" as that term is defined in the Agreement because it does not relate to the Two Part Closed Tracheal Suction System.

Plaintiff's complaint seeks damages from Defendants for contract-related tort claims arising from the exchange of information that took place at the April, 1998 meeting between the parties. Ballard drafted and Plaintiff signed the Agreement in anticipation of the meeting, and, pursuant to its terms, Plaintiff marked all of the drawings, including the ones at issue as "confidential". According to the Agreement, the forum selection clause applies to ". . . [a]ny action under [it] . . .".

Despite Plaintiff's claims to the contrary, the evidence points in one direction only, i.e. that the clause was intended to apply to all claims arising out of the exchange of information that took place at the April, 1998 meeting. Regardless of how Plaintiff characterizes his causes of action, it is clear that this is an idea theft case and Plaintiff's main claim against Ballard is that said theft resulted in a violation of the very Agreement at issue on this motion.

Pursuant to the Agreement, Ballard was obligated to use the information it received from Plaintiff for the sole purpose of evaluating the commercial viability of Plaintiff's designs. When the parties could not reach an agreement regarding Ballard's use of Plaintiff's designs, Ballard was required to destroy all confidential information (including the additional drawings) with the exception of one copy that was to be retained for Ballard's records. Therefore, at its very core, Plaintiff's claim is that Ballard violated the provisions of the Agreement by using his proprietary information in its own patent applications and products.

As this Court has held in the past:

If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims such as negligent design, breach of implied warranty, or misrepresentation.

*Pascalides*, 118 F.R.D. at 302 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 197 (3rd Cir. 1983)).

Thus, this Court concludes that the forum selection clause in this case applies to the subject matter of this litigation.

### (2) *Reasonableness of Enforcement*

■ Next, this Court must determine whether or not the enforcement of the forum selection clause is reasonable. In

the past, a forum selection clause was *per se* invalid on the grounds that it attempted to oust a court of its jurisdiction. However, since that time, the Supreme Court has held that the correct approach is to specifically enforce the forum selection clause unless the party opposing enforceability clearly shows that enforcement would be unreasonable, unjust, or that the clause itself was rendered invalid by reason of fraud. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ Since 1972 this Court and others have had frequent occasion to review the reasonableness of forum selections clauses and, in so doing, have considered a variety of factors to determine reasonableness under *Bremen.* In *D'Antuono v. CCH Computax Systems, Inc.,* 570 F.Supp. 708 (D.R.I.1983), then District Judge Bruce M. Selya, identified a series of factors to aid courts in deciding whether or not to enforce a given forum selection clause. Pursuant to *D'Antuono,* this Court identified and applied the nine factors in *Pascalides*[5] and these same factors are relevant here. They are:

(1) The identity of the law that governs the construction of the contract.

(2) The place of execution of the contract.

(3) The place where the transactions are to be performed.

(4) The availability of remedies in the designated forum.

(5) The public policy of the initial forum state.

(6) Location of the parties, the convenience of prospective witnesses, and the accessibility of evidence.

(7) The relative bargaining power of the parties and the circumstances surrounding their dealings.

(8) The presence or absence of fraud, undue influence (or other extenuating) circumstances.

(9) The conduct of the parties.

*Id.* (quoting *D'Antuono,* 570 F.Supp. at 712).

■ Of course, each factor is important, but there are no set rules for their application. Rather, the totality of the circumstances, coupled with the interests of justice must control. *Id.* (quoting *D'Antuono,* 570 F.Supp. at 712). As this Court has noted, it is the party opposing the enforcement of the forum selection clause that must provide the Court with evidence that application of the clause would be unreasonable *Id.* No such evidence has been offered here, and this Court concludes that a simple application of the reasonableness factors as listed above quite clearly bears this out.

For example, none of the first four factors, taken either individually, or as a whole convince this Court that the forum selection clause is unreasonable. Under the clear language of the Agreement, Utah law governs the construction and interpretation of the contract. The Agreement itself was executed between Plaintiff and Ballard, presumably via mail or telefax, and neither party claims that the actual place of execution must have been Rhode Island or any other jurisdiction outside of Utah. Plaintiff does not point to any specific locale where the origin of Ballard's alleged bad acts occurred. The actual transaction at issue took place in New York; neither party asserts that New York law must be applied. Moreover, neither party argues that lawful remedies are unavailable in Utah or that the public policy of Rhode Island is at issue here.

Next, as in the past, this Court considers the convenience factors and notes that

---

**5.** 118 F.R.D. at 302.

the parties, in consenting to the Utah forum, have in effect subordinated their convenience to the bargain. *See e.g. Pascalides,* 118 F.R.D. at 303. While Plaintiff will have to travel to Utah for trial in the chosen forum, such a journey was apparently within the contemplation of the parties when the bargain was struck. *Id.* "Plaintiff cannot be heard to complain about inconveniences resulting from an agreement (he) freely entered into." *Id.* (quoting *D'Antuono,* 570 F.Supp. at 713).

The factors encompassing the conveniences of the witnesses and accessibility of evidence deserve independent consideration. The operative complaint alleges (1) breach of implied covenant of good faith and fair dealing; (2) promissory estoppel; (3) unjust enrichment; (4) unlawful conversion, and; (5) violations of the Rhode Island Trade Secret Act. The witnesses involved in the evaluation, development, patent application and eventual manufacture of the device at issue and all critical witnesses are in Utah at Ballard's principal place of business. Additionally, whether the alleged bad acts occurred in New York at the April 1998 meeting, or at a later date-perhaps even at Ballard's Utah offices-such considerations seem less important given the nature of this particular case. In any event, in cases where no forum is wholly convenient (or wholly obvious), a forum selection clause can and should tip the scales. *Pascalides,* 118 F.R.D. at 303 (quoting *D'Antuono,* 570 F.Supp. at 714).

The final three reasonableness factors involve the relationship between the Plaintiff and Ballard and their behavior during the time-period at issue. In this case none of three lead this Court to question the reasonableness of the forum selection clause. The negotiations culminating in the execution of the Agreement were at arms length (there are no allegations to the contrary), and Plaintiff is a sophisticated and successful medical device designer and consultant. Moreover, nothing in the record suggests that Ballard coerced Plaintiff into signing the agreement or that Plaintiff grudgingly acceded to a forum designation demand. On the contrary, there are allegations that the Agreement was drafted and entered into at Plaintiff's urging. Lastly, Plaintiff does not allege, nor do the facts suggests the existence of fraud or undue influence at the time the Agreement was drafted and signed.

After considering all the relevant factors, this Court concludes that the forum selection clause agreed to by the parties is reasonable and appropriate in this particular matter. Therefore, under *Bremen,* and its more local progeny, this Court holds that, pursuant to the Agreement, proper venue for resolution of this matter is in Salt Lake City, Utah.

### *TRANSFER*

As noted above, having upheld the forum selection clause, this Court finds that in the interest of justice transfer of this matter to Utah pursuant to 28 U.S.C. § 1406(a) is most appropriate. *Janko v. Outboard Marine Corp.,* 605 F.Supp. 51 (W.D.Okla.1985)(holding that when action arising under contract containing venue selection clause is filed in court other than that specified in clause, case will be transferred to forum selected by contract unless venue selection clause is unreasonable and unjust or invalid due to fraud or overreaching), *See also Hoffman v. Burroughs Corp.,* 571 F.Supp. 545, 551 (N.D.Tex.1982)(holding that transfer most appropriate under 28 U.S.C. § 1406(a)).

While "the interest of justice" is less than the clearest of standards, all of the traditional factors are at play here. Transfer, rather than dismissal provides all parties with an opportunity for a speedy resolution of the matter. Transfer

prevents Plaintiff from facing unnecessary statute of limitation issues, and lastly, transfer rather than dismissal provides for a more efficient use of judicial resources. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466–67, 82 S.Ct. 913, 8 L.Ed.2d 39(1962)(holding that purpose of transfer is "that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits").

## *CONCLUSION*

For the foregoing reasons, this matter is hereby transferred to the United States District Court, for the District of Utah.

It is so ordered.