Jane DOE, individually and as parent and next friend of the minor child, John Doe, Plaintiffs,

v.

SEACAMP ASSOCIATION, INC., Dieter Charles Vogt, American Re–Insurance Company, National Union Fire Insurance Company, and Federal Insurance Company, Defendants.

No. CIV.A.01–11830–RCL.

United States District Court, D. Massachusetts.

Aug. 13, 2003.

James P. Brady, Hingham, MA, for Plaintiff.

John B. Johnson, Corrigan, Johnson & Tutor, PA, Boston, MA, Howard J. Russell, Atlanta, GA, for Defendants.

## MEMORANDUM ORDER ON DEFENDANT SEACAMP ASSOCIATION, INC.'S MOTION TO DISMISS

LINDSAY, District Judge.

This action encompasses a series of tort and contract claims based on the sexual abuse by defendant Dieter Charles Vogt ("Vogt") of the minor plaintiff John Doe.[1] Vogt met John Doe when the latter participated in a summer camp program run by defendant Seacamp Association, Inc. ("Seacamp") at a facility in the Florida Keys. Vogt, who is currently serving a lengthy federal prison term, confessed to abusing John Doe both during the 1999 camp session at Seacamp's Florida facility and later in the same summer at the Does' home in Plymouth County, Massachusetts.

John Doe and his mother, Jane Doe, have asserted in their fourth amended complaint (the "complaint") numerous claims against Seacamp for its alleged role in causing their respective injuries: count I—negligence in its hiring, supervision and retention of Vogt; count II—sexual battery; count III—invasion of John Doe's privacy and exploitation of his image; count IV—negligent infliction of emotional distress; count V—Jane Doe's loss of consortium; count VI—misrepresentation of the safety of Seacamp's program; count VII—breach of contract; count VIII—promissory estoppel; and count IX—violation of Mass. Gen. Laws ch. 93A § 11. Each of counts I through IV is captioned as having been asserted under the laws of Florida, and counts V and IX are explicitly identified as causes of action intended to be governed by Massachusetts law.

---

1. Documents revealing the identities of the minor plaintiff and his mother have been impounded by order of this court to protect their privacy.

Seacamp has moved to dismiss the complaint for various asserted procedural and substantive defects. The entire complaint, according to Seacamp, is subject to dismissal under Fed.R.Civ.P. 12(b)(3) for want of proper venue because of a forum selection clause contained in the application for enrollment signed by the plaintiffs. Should the forum selection clause be found to be unenforceable, Seacamp continues, Massachusetts as a venue is still improper under the federal venue statute. Thus, as an alternative to dismissing the case, Seacamp proffers its petition for transfer of the case from this court to the United States District Court for the Southern District of Florida. Should its argument for the transfer also be found unpersuasive, Seacamp moves to dismiss the complaint on the ground that Seacamp is not subject to personal jurisdiction in the District of Massachusetts. Finally, Seacamp claims that count VI should be dismissed because that count is not pleaded with the particularity required by Fed.R.Civ.P. 9(b), and that counts II and III should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief may be granted. For the reasons discussed below, Seacamp's motion is DENIED in part and GRANTED in part.

**Analysis: Forum Selection Clause.**

Seacamp's primary argument is that this dispute is governed by a forum selection clause requiring the Does to bring suit in Monroe County, Florida. Seacamp, in support of this argument, cites Massachusetts case law enforcing forum selection clauses when certain indicia of reasonable-ness are present. *See* Memorandum of Law in Support of Seacamp Association, Inc.'s Renewed Motion to Dismiss Fourth Amended Complaint ("Def.Mem.") at 3 (citing *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 646 N.E.2d 741 (1995)). I note, as an initial matter, that Seacamp has skirted the issue of whether Massachusetts or federal law should govern the question of the enforceability of this clause.[2] The First Circuit has taken the view that forum selection clauses in diversity actions present an *Erie* question that has not yet been resolved by the Supreme Court. *See Lambert*, 983 F.2d at 1117 n. 10 (noting circuit split). Fortunately for Seacamp's analysis, federal common law and Massachusetts law "treat forum selection clauses identically." *Rooney v. Biomet, Inc.*, 63 F.Supp.2d 126, 127 (D.Mass.1999) (order vacated and reentered for clarification by *Rooney v. Biomet, Inc.*, 197 F.R.D. 209 (D.Mass.2000)).

The Does contend that the forum selection clause is not enforceable in light of the considerations of fairness taken into account by Massachusetts and federal courts. In addition, they claim that the clause does not apply to their causes of action because the claims asserted in the complaint do not arise out of the Seacamp application signed by Jane Doe (which is treated here as the contract between the parties) to enroll her son in the summer program. I discuss each of these arguments below.

*Enforceability Under Massachusetts and Federal Law.* For many years, courts were reluctant to give effect to contractual provisions seeking to set in advance the

**2.** Seacamp also overlooks First Circuit cases holding that a motion to dismiss on the ground of improper venue, when a forum selection clause is at issue, should be made under Fed.R.Civ.P. 12(b)(6), rather than Rule 12(b)(3). *See Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993). However, this procedural defect does not appear to have been fatal in other cases, and I will accordingly treat Seacamp's motion as one for failure to state a claim on which relief may be granted. *Id.; see also In Re N. Parent, Inc.*, 221 B.R. 609, 613–14 (Bankr.D.Mass.1998) (citing cases and concluding that motion should be treated as if brought pursuant to Rule 12(b)(6)).

venue for any eventual dispute, because of a perceived concern that such provisions would oust of its jurisdiction a court in which venue properly lay. *See M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 9–10, 92 S.Ct. 1907, 1913 n. 10, 32 L.Ed.2d 513 (1972) (citing leading early cases). The *Bremen* Court endorsed enforcement of forum selection clauses except where such a clause could be shown to be "unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. at 1916.

■ The modern view, which takes into account the need for predictability in commercial transactions, gives much greater deference to forum selection clauses. Post-*Bremen*, courts applying Massachusetts law and federal courts in this circuit have identified several factors to be weighed in the decision as to whether a forum selection clause is reasonable, just and freely entered into. Writing as a judge in the District of Rhode Island, Judge Selya synthesized the factors as follows: (i) the law governing the contract in question; (ii) the place of execution of the contract; (iii) the place where the transactions have been or will be performed; (iv) the availability of remedies in the contractually designated forum; (v) the public policy of the plaintiff's choice of forum state; (vi) the location of the parties, convenience of witnesses and accessibility of evidence; (vii) the relative bargaining power of the parties and the circumstances of their negotiations; (viii) the presence of fraud or other undue influence; and (ix) the conduct of the parties. *See D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708, 712 (D.R.I.1983) (collecting cases applying federal law). One Massachusetts superior court has adopted a slightly condensed version of these factors. *See Lectric's & Inc. v. Power Controls,*

*Inc.*, 1995 WL 809558, at *3 (Mass.Super.1995) (citing six-part test used in *Carefree Vacations, Inc. v. Brunner*, 615 F.Supp. 211 (D.Tenn.1985)).

■ However the factors are articulated, the Does' burden in resisting the forum selection clause is a heavy one. Their complaint concedes that most of the tort claims are brought under Florida law, and the contract, though lacking a specific governing law provision, would most likely be found to be governed by Florida law as well. With respect to a choice of law question raised as to a contract in which the parties have not specified the governing law, Massachusetts applies "[']the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties[.]' " *Bushkin Assocs., Inc. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662, 669 (1985) (quoting Restatement (Second) of Conflict of Laws § 188 (1971)). These factors include the place of contracting and of negotiation; the place where the contract is to be performed; and the domiciles of the parties to the contract. *See id.*

Here, the application form required a deposit to be sent to Seacamp to secure John Doe's place in the program, thus requiring the last act necessary for effectiveness of the contract to take place in Florida. *See* Exhibit A to Def. Mem. (Seacamp Enrollment Agreement). In addition, the place for performance of the contract was Seacamp's facility in Key West, Florida—a factor that weighs in favor both of the application of Florida law to the contract and of the enforceability of the forum selection clause.

With respect to convenience of witnesses and litigants, it appears from the parties' submissions that the plaintiffs anticipate calling, in addition to themselves, up to four Massachusetts residents as witnesses, as well as "a number of former SeaCamp

counselors[.]" Ex. B to Plaintiff's Opposition to Defendant Seacamp's Renewed Motion to Dismiss Fourth Amended Complaint ("Pl.Opp.") (Affidavit of James P. Brady). Of the counselor witnesses, two or three are Florida residents, and the remainder are residents of neither Florida nor Massachusetts. *See id.* Seacamp has not provided a list of anticipated witnesses, but notes that its officers and employees are located in Florida. *See* Reply to Plaintiffs' Opposition to Motion to Dismiss Fourth Amended Complaint ("Def.Reply") at 3. For witnesses who live neither in Florida nor in Massachusetts, situating this action in Florida presumably presents no greater burden than litigating in Massachusetts.

As to the factor concerning availability of remedies, one cannot gainsay that Massachusetts has an interest in vindicating the rights of its citizens. The plaintiffs, however, have not argued that they are without remedy in a Florida court; indeed, with respect to certain of their claims, they have specifically invoked the protection of the laws of Florida. *See* Compl. ¶¶ 97–134.

This leaves only the consideration of inconvenience or injustice to the Does as potential obstacles to dismissing this action. I am not unsympathetic to the plaintiffs' situation: John Doe has experienced a traumatic and humiliating assault by Vogt, and his mother is widowed, leaving her the sole supporter of John Doe and his developmentally disabled older brother. *See* Exhibit A to Pl. Opp. (Affidavit of Jane Doe). However, the standard for declining to enforce a forum selection clause because of inconvenience to one of the parties does not apply to situations in which it simply may be difficult or expensive for the party seeking an alternative forum to litigate in the contractual forum. Rather, the Does must be able to show that they would suffer "such serious inconvenience in liti-

gating in the selected forum that [they are] effectively deprived of [their] day in court." *Fireman's Fund Amer. Ins. Cos. v. Puerto Rican Forwarding Co., Inc.*, 492 F.2d 1294, 1297 (1st Cir.1974) (citing *Bremen*, 407 U.S. at 12–19, 92 S.Ct. at 1914–1918). Taking into account Seacamp's offer to depose the plaintiffs in Massachusetts, *see* Def. Reply at 3, the inconvenience to the Does of maintaining their lawsuit in Florida cannot be said to be so severe as to deprive them of their ability to pursue their case at all.

The Does also suggest that because the forum selection clause appeared in a "take-it-or-leave-it contract," there was no opportunity to negotiate it. This, they argue, should lead me to conclude that enforcement would not be fair or reasonable. *See* Pl. Opp. at 8–9. According to their reasoning, forum selection clauses are appropriate only in contracts negotiated between sophisticated commercial parties at arms' length. *See id.* (citing *Jacobson*, 646 N.E.2d at 744.) Recent case law makes it clear, however, that neither lack of commercial sophistication nor the use of "boilerplate" or form contracts will render a forum selection clause automatically unenforceable. In *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385 (1st Cir.2001), the First Circuit applied the reasoning in *Lambert* to a case involving an independent contractor and the encyclopedia company that hired him to sell its products. *See Silva*, 239 F.3d at 389 (quoting *Lambert*, 983 F.2d at 1118–19 and citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (holding passenger ticket containing forum selection clause enforceable notwithstanding lack of opportunity to negotiate)). The *Silva* court also found that Encyclopedia Britannica's alleged superiority of bargaining power was insufficient to void the forum selection clause because the corporation used its position as employer "to do

nothing more than offer an appealing employment opportunity to appellant, and no evidence suggests that he was coerced into entering the agreement." *Silva*, 239 F.3d at 389. Similarly, Jane Doe does not allege that she was coerced into registering her son for Seacamp's program. Doe family members chose to avail themselves of the summer camp opportunities for John Doe's benefit. I therefore hold that the forum selection clause, as presented in the application form signed by the plaintiffs, is not unreasonable or unfair, and should be given effect in this case.

*Applicability of Forum Selection Clause to Plaintiffs' Claims.* In addition to claiming that the forum selection clause in the Seacamp application is unenforceable, the plaintiffs assert that it should not govern their cause of action, because the claims asserted in the complaint do not arise from the contract. *See* Pl. Opp. at 6–7. The clause at issue states that "[t]he parties agree that venue for any action arising out of, or related to, this contract shall be in Monroe County, Florida." Exhibit A to Def. Mem. (Seacamp Enrollment Form). Jane Doe's brief contends that this language applies only to risks and injuries specifically contemplated by the contract, which identified certain camp activities as bearing an increased risk of injury. Applying this logic, only a suit arising from an injury to John Doe while engaged in a camp activity—swimming or boating, for instance—would properly be governed by the forum selection clause.

The plaintiffs' position is not supported by relevant case law, nor even by the substance of the claims enumerated in the complaint. Count VII expressly asserts breach of contract, while count VI (misrepresentation), count VIII (promissory estoppel) and count IX (chapter 93A violations) are all premised on "marketing materials, advertisements, and other representations to Plaintiffs and to the general public." Compl. ¶ 139. The plaintiffs do not specify further details regarding these alleged statements, and it appears from the complaint that the only contract expressly entered into was that embodied by the enrollment form. Further, the facts as pleaded do not indicate that Jane Doe failed to read or understand this provision.

■ A review of the case law leads me to conclude that the tort claims, too, are covered by the forum selection clause. The forum selection clause was worded to indicate that it governed any claim related to or arising from a contract, the subject of which were the terms and conditions of John Doe's enrollment at Seacamp. That the contract clearly specified some risks to which a camper might be subject (dangers of aquatic sports), but not others (predation by camp employees) does not negate the fact that when the parties addressed the potential liability of Seacamp, they included a contractual provision that required litigation to take place in Florida. The Does' argument that their tort claims do not involve "the same operative facts as a parallel claim for breach of contract," *Lambert*, 983 F.2d at 1121–22, is unavailing, if not specious. The "operative facts" relate to Seacamp's alleged negligence in hiring Vogt, that is, the breach of a duty to John Doe under tort law as well as under a contractual or contract-like series of duties relating to the representations on which the Does relied in deciding to enroll John Doe at Seacamp. Another court in this district, when faced with a claim that an action for breach of fiduciary duty should not be governed by a forum selection clause because the theory of the complaint was not specifically a suit for breach of contract, held that "a choice of law provision should apply to non-contract claims where the basic source of any duty owed by defendants to the plaintiff is derived

from the contractual relationship structured by the underlying agreement." *McAdams v. Mass. Mut. Life Ins. Co.,* 2002 WL 1067449, at *12 (D.Mass. May 15, 2002). Though the clause in question in *McAdams* was a choice-of-law, rather than a forum selection, clause, the *McAdams* court looked to cases involving forum-selection clauses to reason by analogy that, where "the source of the duty which the defendants allegedly owed to the plaintiffs is derived from the contractual relationship," the contractual provisions should govern. *Id.* at *13 (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3rd Cir.1983)). Absent the contract enrolling John Doe at Seacamp, no duty would have been owed to him by this defendant. Reason does not permit the conclusion that the Does' claims in tort have nothing to do with the contractual relationship between the Does and Seacamp. If "forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleadings [of tort claims]." *In re N. Parent, Inc.* 221 B.R. at 623 (quoting *Coastal Steel,* 709 F.2d at 203) (internal quotation marks omitted).

*Seacamp's Other Theories Favoring Venue in Florida.* Seacamp has also raised the theory that, should I find the forum selection clause to be unenforceable and/or inapplicable, the federal venue statute does not permit this action to be brought in this district because there can be no personal jurisdiction over Seacamp in Massachusetts. Though the parties have briefed this matter extensively, I do not find it necessary to set out an exegesis of the constitutional and statutory principles governing personal jurisdiction, because I have concluded that the Does are bound by the forum selection clause. Similarly, having concluded that venue in this district is inappropriate, I need not reach Seacamp's claims regarding the sufficiency of the complaint under rule 9(b) and rule 12(b)(6).

### Conclusion

For the reasons stated above, defendant Seacamp Association, Inc.'s motion to dismiss the complaint is GRANTED on the grounds that the forum selection clause requires the plaintiffs to bring suit in Monroe County, Florida. The complaint is therefore dismissed without prejudice to the Does' ability to present claims in a court where venue is appropriate. Because I need not reach the other bases on which Seacamp has moved for relief, its further motions to transfer this action and to dismiss certain counts for failure to state a claim on which relief may be granted or for insufficient particularity are DENIED, as moot.

SO ORDERED.