**REDER ENTERPRISES, INC. f/k/a Berkshire Armored Car Service, Inc., Plaintiff**

v.

**LOOMIS, FARGO & CO. CORPORATION, Defendant.**

**C.A. No. 06–30168–MAP.**

United States District Court, D. Massachusetts.

June 1, 2007.

Jennifer A. Rymarski, Mark H. Bluver, Shatz, Schwartz & Fentin PC, Springfield, MA, for Plaintiff.

Michael J. Keefe, Paul R. Keane, Martin, Magnuson, McCarthy and Kenney, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Docket Nos. 8 & 15)

PONSOR, District Judge.

This is an action for breach of contract in which Defendant has moved to dismiss based upon the form-selection clause in the applicable contract. The Motion to Dismiss was referred to Chief Magistrate Judge Kenneth P. Neiman for report and recommendation.

On May 1, 2007, Judge Neiman issued his Report and Recommendation, to the effect that Defendant's motion should be allowed and the case dismissed, without prejudice. His memorandum reminded the parties that they had ten days from the receipt of the Report and Recommendation to file objections, *See* Report and Recommendation (Dkt. No. 15) at 15, n. 5. No objection to the Report and Recommendation has been filed by either party.

Having reviewed the substance of the Report and Recommendation and finding it meritorious, and noting that there is no objection, the court, upon *de novo* review, hereby ADOPTS the Report and Recommendation. Based upon this, the court hereby ALLOWS Defendant's Motion to Dismiss (Dkt. No. 8) and orders the case dismissed, without prejudice. The clerk will enter a judgment of dismissal. This case may now be closed.

It is So Ordered.

## REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Document No. 8)

NEIMAN, Chief United States Magistrate Judge.

In this case, Reder Enterprises., Inc. f/k/a Berkshire Armored Car Service, Inc. ("Plaintiff") seeks relief for breach of contract and for the alleged tortious use and appropriation of confidential information by Loomis, Fargo & Co. Corporation ("Defendant"). Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant has moved to dismiss Plaintiff's complaint in its entirety, arguing that an enforceable forum-selection clause requires Plaintiff to bring the action in Texas.[1]

---

1. Although Defendant also cites Fed.R.Civ.P. 12(b)(1) and (3)—which, respectively, govern dismissals for lack of subject matter jurisdic-

Defendant's motion to dismiss has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, the court will recommend that Defendant's motion be allowed.

### I. STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in a plaintiff's complaint and construe all reasonable inferences in its favor. *See Gorski v. New Hampshire Dep't of Corrections*, 290 F.3d 466, 473 (1st Cir.2002); *Estate of Soler v. Rodriguez*, 63 F.3d 45, 53 (1st Cir.1995). A dismissal for failure to state a claim is appropriate if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 998 (1st Cir.1992).

### II. BACKGROUND

The following factual allegations come directly from the complaint and are stated in a light most favorable to Plaintiff. *See Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir.1992). The court has also considered the two contractual documents attached to and incorporated into the complaint—the parties' Mutual Confidentiality Agreement dated August 26, 2003, and their Letter of Intent executed in May of 2004—both of which are addressed more fully below. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001) (noting that such documents may be properly considered under Rule 12(b)(6)).

Plaintiff is a Massachusetts corporation which operated an armored car business for nearly forty-five years under the name of Berkshire Armored Car Services, Inc., providing services to various financial in-

stitutions and retail establishments. (Complaint ¶¶ 1, 5.) Defendant is a Texas business registered in Massachusetts as a foreign corporation. (*Id.* ¶ 2.) In 2003, Plaintiff and Defendant entered into preliminary discussions regarding Defendant's purchase of Plaintiff's assets, including its customer accounts and equipment. (*Id.* ¶ 7.)

To that end, on August 26, 2003, the parties signed a Mutual Confidentiality Agreement—hereinafter the "MCA"—which outlined their future intention to disclose confidential and proprietary information to one another. (*Id.* ¶ 8.) Paragraph 7 of the MCA, entitled "Governing Law and Equitable Relief," provides as follows:

> This Agreement shall be governed and construed in accordance with the laws of the State of Texas and the parties consent to the exclusive jurisdiction of the state courts and U.S. federal courts located there for any dispute arising out of this Agreement. Both parties agree that in the event of any breach or threatened breach by receiving party, the disclosing party may obtain, in addition to any other legal remedies which may be available, such equitable relief as may be necessary to protect disclosing party against any such breach or threatened breach.

(Complaint, Exhibit A ¶ 7.) As is evident, paragraph 7 contains three separate clauses: (1) a clause granting each party the right to obtain equitable relief in the event of a breach or threatened breach of the MCA's confidentiality provisions; (2) a choice-of-Texas-law clause; and, most importantly for present purposes, (3) a forum-selection clause which broadly provides that "for any dispute arising out of

tion and improper venue—the First Circuit analyzes a motion to dismiss based upon a forum selection clause pursuant Rule 12(b)(6). *See Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387–88 (1st Cir.2001).

the [MCA]" the parties consent "to the exclusive jurisdiction of the state and ... federal courts" of Texas. (*Id.*)

On May 14, 2004, Plaintiff signed a Letter of Intent drafted by Defendant—hereinafter the "LOI"—which summarized the terms of the contemplated sale, including the offered assets, conditions precedent, closing date, and non-competition provisions. (Complaint, Exhibit B.) The LOI did not contain a forum-selection clause.

Shortly after executing the LOI, Plaintiff furnished Defendant with confidential information and customers. (Complaint ¶¶ 10–12.) Plaintiff also disclosed information regarding its routes and price structure to allow Defendant to complete its due-diligence and evaluate Plaintiff's business prior to the asset sale. (*Id.* ¶¶ 10, 16.) According to the complaint, "[t]he Confidential Information was provided to Defendant under the terms of [both] the Confidentiality Agreement [*i.e.*, the MCA] and the LOI." (*Id.* ¶ 11.)

In June or July of 2004, negotiations between Plaintiff and Defendant broke down and, as a result, the asset sale was never consummated. (*Id.* ¶ 13.) Accordingly, Plaintiff requested the return of its confidential and proprietary information. (*Id.* ¶ 14.) Unfortunately for Plaintiff, however, numerous customers had already "terminated their contracts with Plaintiff and ... entered [into] contracts with ... Defendant." (*Id.* ¶ 15.) As a result, Plaintiff claims, it suffered financial hardship and had to sell its remaining assets to another buyer while its principal, Gerard S. Reder, was forced into filing a voluntary bankruptcy petition. (*Id.* ¶ 18.)

In September of 2006, Plaintiff filed this action in the Massachusetts Superior Court for Berkshire County and Defendant thereafter removed it to this forum. Plaintiff's complaint contains five counts: breach of contract (Count I), interference with contractual relations (Count II), "mis-representation/fraud/deceit" (Count III), violation of Mass. Gen. L. ch. 93A (Count IV), and conversion of trade secrets in violation of Mass. Gen. L. ch. 93, § 42 (Count V). In due course, Defendant filed the instant motion to dismiss.

### III. Discussion

In the court's view, this is a fairly straightforward "forum-selection" matter. As will be described, the court agrees with Defendant that the parties validly agreed to the exclusive jurisdiction of the Texas courts and Plaintiff offers no convincing argument to the contrary. Accordingly, the court will recommend that Defendant's motion to dismiss be allowed. Still, there are several nuanced aspects of the analysis which require greater explanation.

### A. *Framing the Issue*

The court begins with the well-settled principle that, "in the light of present-day commercial realities," a forum-selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). More to the point, a court is *required* to enforce a duly-executed forum-selection clause unless the objecting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id. See Restatement (Second) of Conflict of Laws § 80* (1988 rev.) (forum-selection clauses are to be enforced when it is fair and reasonable to do so). *See also D'Antuono v. CCH Computax Sys., Inc.*, 570 F.Supp. 708, 711 (D.R.I. 1983) ("The recalcitrant party (here, the plaintiff) bears a heavy burden of proof in his attempt to show unreasonableness." (citing *Bremen*, 407 U.S. at 17, 92 S.Ct. 1907)).

Before applying these principles to the instant matter, the court makes two pre-

liminary comments. First, essentially following the parties' lead, the court has analyzed the forum-selection clause at issue pursuant to federal common law as established through *Bremen* and its progeny. As it turns out, there is no conflict between federal common law and either Texas or Massachusetts law regarding the enforceability of forum-selection clauses. *See Doe v. Seacamp Ass'n,* 276 F.Supp.2d 222, 224 (D.Mass.2003) ("federal common law and Massachusetts law treat forum selection clauses identically") (citation and internal quotation marks omitted); *In re AIU Ins. Co.,* 148 S.W.3d 109, 112 (Tex. 2004) (using *Bremen* as template for analyzing forum-selection clause under Texas law). Accordingly, there is no need to reach the nettlesome *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), issue of which law might otherwise apply in this diversity case. *See Silva,* 239 F.3d at 386 n. 1. *See also Lambert v. Kysar,* 983 F.2d 1110, 1116 & n. 10 (1st Cir.1993) (declining to confront "the daunting question of whether forum-selection clauses are to be treated as substantive or procedural for *Erie* purposes," observing that the Supreme Court has not yet resolved the issue and noting circuit split on proper approach).

Second, Plaintiff's argument to the contrary, there is no question that, on its face, the forum-selection clause contained in the MCA governs this lawsuit. Put simply, this case, in the court's opinion, is clearly a "dispute arising out of" the MCA and, hence, covered by that contract's broadly-worded forum-selection clause. For example, Count I of the complaint alleges violation of "the contract" and makes direct reference to Defendant's alleged breach of the confidentiality provisions contained in the MCA. (Complaint ¶¶ 20–21.) Similarly, Count III directly cites the MCA and its confidentiality provisions as a source of Defendant's tortious misrepresentation, fraud and deceit. (*Id.* ¶¶ 29–33.) Finally,

Count V alleges conversion of trade secrets, *i.e.,* the "confidential information," in contravention of "the strict guidelines of the [MCA]." (*Id.* ¶¶ 40–43.)

To be sure, these three counts—Counts I, III and V—also cite the LOI (see *id.* ¶¶ 20, 30 and 40) while the interference with contractual relations and chapter 93A counts—Counts II and IV—do not *specifically* mention the MCA (but see *id.* ¶ 26) (alleging in Count II that "Defendant intentionally interfered with Plaintiff's contracts with [its] customers by soliciting these customer[s] and offering them competitive pricing because it had knowledge of Plaintiff's pricing and route structure"), ¶ 37 (alleging in Count IV that "Defendant violated [chapter 93A] by utilizing Plaintiff's Confidential Information in order to gain a competitive advantage over Plaintiff in the guise of a desire to purchase Plaintiff's assets") and ¶ 38 (alleging in Count IV that "Defendant violated [chapter 93A] when it, having Plaintiff's pricing structure and route schedule, 'cherry picked' customers from the Plaintiff making it impossible for Plaintiff to conduct a profitable business based on its established customer runs"). These distinctions, however, are of no moment.

As indicated, the forum-selection clause in the MCA is intentionally broad, *i.e.,* it governs "any dispute" which can be said to be "arising out of" that contract. As described, the complaint easily falls within that generous scope. *See, e.g., Omron Healthcare, Inc. v. Maclaren Exports Ltd.,* 28 F.3d 600, 601–03 (7th Cir.1994) (distribution agreement with a clause stating that "[t]he parties hereto agree that all disputes arising out of this Agreement which cannot be resolved amicably between the parties shall be referred to the High Court of Justice in England" held to cover trademark infringement dispute); *Roby v. Corporation of Lloyd's,* 996 F.2d

1353, 1358–66 (2nd Cir.1993) (insurance syndication agreement stating that "Each party hereto irrevocably agrees that the courts of England shall have exclusive jurisdiction to settle any dispute and/or controversy of whatsoever nature arising out of or relating to the [Name's] membership of, and/or underwriting of insurance business at, Lloyd's" was held to cover claims under civil RICO and federal securities law); *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944–45 (3rd Cir.1988) (agreement to sell real estate on commission stating that "any litigation upon any of [its] terms ... shall be maintained" in a court in Miami, Florida was held to cover civil RICO claims); *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir.1987) (it was "clear from the language of the agreement that the forum selection clause encompassed any dispute arising out of or in connection with the dealer-manufacturer relationship," because it referred to *"any* 'case or controversy arising under or in connection with this Agreement' "); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F.Supp. 1334, 1382 (N.D.Iowa 1996) (holding that forum-selection clause in licensing agreement was broad enough to encompass tort, negligence and strict liability claims); *Stephens v. Entre Computer Centers, Inc.*, 696 F.Supp. 636, 638 (N.D.Ga.1988) (holding that forum-selection clause that referred to "any action" applied to tort claims, because it covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract").

Within this district, Judge Reginald C. Lindsay has held that a similarly-worded forum-selection clause—*i.e.,* one that governed "any claim related to or arising from" the contract at issue—covered not only claims directly based on that contract but, as well, tort claims that grew out of the contractual relationship. *Doe,* 276 F.Supp.2d at 227. Here, too, the fact that several of the five claims sound in tort and/or do not cite the MCA (either exclusively or in conjunction with the LOI) does not make the MCA's forum selection provision any less applicable. As Judge Lindsay explained, "[t]he [plaintiffs]' argument that their tort claims do not involve 'the same operative facts as a parallel claim for breach of contract,' is unavailing, if not specious." *Id.* (quoting *Lambert,* 983 F.2d at 1121–22). *See also id.* at 227–28 (citing with approval *McAdams v. Mass. Mut. Life Ins. Co.,* 2002 WL 1067449, at *12 (D.Mass. May 15, 2002) (Freedman, J.)). Even the Massachusetts state court decision upon which Plaintiff most centrally relies held that "[a] plaintiff should not be allowed to vitiate the effect of a forum selection clause simply by alleging peripheral claims that fall outside its apparent scope." *Jacobson v. Mailboxes Etc. U.S.A., Inc.,* 419 Mass. 572, 646 N.E.2d 741, 746 (1995).

### B. *Plaintiff's Arguments*

Having established the existence of a broadly-governing forum-selection clause, the court now addresses what are essentially three arguments in support of Plaintiff's effort to escape its reach. None of these arguments, in the court's estimation, warrants denial of Defendant's motion to dismiss.

First, Plaintiff makes much of the fact that, in negotiating the LOI in the Spring of 2004, the parties discussed, but never included in that document, a choice-of-law provision.[2] "Since the LOI contains no

---

2. In essence, Plaintiff notes that its attorney suggested in emails to Defendant's attorney that a Massachusetts choice-of-law clause ought to be included in both the LOI and the ultimate asset sale agreement, but Defendant's attorney preferred to "argue about it later." (See Plaintiff's Brief, Exhibits A–D.)

choice-of-law provision," Plaintiff argues, "[Defendant]'s claims must be reviewed under traditional *Erie* and substantive law considerations." (Plaintiff's Brief at 7.) "The result of that analysis," Plaintiff continues, "clearly indicates [that] the case was properly brought in Massachusetts, should remain in Massachusetts, and should be governed by Massachusetts law." (*Id.*)

There are several problems with Plaintiff's argument. First, a court is ordinarily precluded from looking beyond the four-corners of a complaint—here, to Defendant's emails (see n. 2)—in a Rule 12(b)(6) motion to dismiss. *See Young v. Lepone*, 305 F.3d 1, 10–11 (1st Cir.2002). As described, the four-corners of this complaint demonstrate that the parties' dispute falls easily within the broad forum-selection clause contained within the MCA. Moreover, even were the court to consider the emails now proffered by Plaintiff, they demonstrate at most that the parties were negotiating a choice-of-*law* provision for the LOI, not a choice-of-*forum* clause. The clear distinction between the two is never quite recognized by Plaintiff. At bottom, even if the LOI intentionally contained no forum-selection clause—let alone no choice-of-law provision—it would be of no consequence to the court's analysis.

Second, Plaintiff argues that enforcement of the MCA's forum-selection clause would be "unreasonable" under the circumstances. *See Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. "To establish that a particular choice-of-forum clause is unreasonable, a resisting party must present evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court." *Fireman's Fund Am. Ins. Companies v. Puerto Rican Forwarding Co.*, 492 F.2d 1294, 1297

(1st Cir.1974). The court finds Plaintiff's argument wanting.

To frame its unreasonableness argument, Plaintiff cites nine factors articulated by Judge Bruce M. Selya when he was a district judge in Rhode Island: (1) "[t]he identity of the law which governs the construction of the contract"; (2) "[t]he place of execution of the contract(s)"; (3) "[t]he place where the transactions have been or are to be performed"; (4) "[t]he availability of remedies in the designated forum"; (5) "[t]he public policy of the initial forum state"; (6) "[t]he location of the parties, the convenience of prospective witnesses, and the accessibility of evidence"; (7) "[t]he relative bargaining power of the parties and the circumstances surrounding their dealings"; (8) "[t]he presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances"; and (9) "[t]he conduct of the parties." *D'Antuono*, 570 F.Supp. at 712 (citations omitted). *See also Doe*, 276 F.Supp.2d at 225 (citing *D'Antuono* factors with approval). "While each of these factors has some degree of relevance and some claim to weight," Judge Selya explained, "there are no hard-and-fast rules, no precise formula. The totality of the circumstances, measured in the interests of justice, will—and should—ultimately control." *Id.*

In the court's view, the totality of the circumstances, viewed through the prism of the nine cited factors, does not sustain Plaintiff's "heavy" burden of proving unreasonableness. *Doe*, 276 F.Supp.2d at 225; *D'Antuono*, 570 F.Supp. at 711. The first factor, the governing law, is at best a wash; although two of the complaint's counts are grounded in *Massachusetts* statutes, the MCA, as noted, includes a broadly-worded choice-of-*Texas*-law provision. The second factor, the place of execution, is also a toss-up; Defendant exe-

cuted the MCA and LOI in Texas while Plaintiff appended his signature to those contracts in Massachusetts. For similar reasons, the court believes that the third factor, the place of performance, favors each state equally. And since Plaintiff ignores the fourth and fifth factors—which concern, respectively, the availability of remedies in Texas and the public policy of Massachusetts—the court has not considered them here.

The sixth factor—which deals with the location of the parties, the convenience of prospective witnesses, and the accessibility of evidence—is also inconsequential. Witnesses and evidence are obviously located in each state. To be sure, the court is not unsympathetic to Mr. Reder's situation; he is 79 years old and said to be in frail health. (See Document No. 12 (Aff. of Gerard Reder) ¶¶ 1, 28.) [3] As Judge Lindsay recognized in *Doe*, however, "the standard for declining to enforce a forum selection clause because of inconvenience to one of the parties does not apply in situations in which it simply may be difficult . . . for the party seeking an alternative forum to litigate in the contractual forum." *Id.*, 276 F.Supp.2d at 226. "Rather," Judge Lindsay explained, a plaintiff "must be able to show that [he] would suffer 'such serious inconvenience in litigating in the selected forum that [he is] effectively deprived of [his] day in court.'" *Id.* (quoting *Fireman's Fund*, 492 F.2d at 1297) (in turn, citing *Bremen*, 407 U.S. at 12–19, 92 S.Ct. 1907). That is surely not the situation here.[4]

As for the seventh factor, the court believes that the parties' relative bargaining power actually militates in *Defendant's* favor. As Defendant notes, the parties are each sophisticated business entities that, through counsel, negotiated their transactions at arm's length. And as "[r]ecent case law makes it clear[,] . . . neither lack of commercial sophistication nor the use of 'boilerplate' or form contracts will render a forum selection clause automatically unenforceable." *Id.* (upholding forum-selection clause in standard "summer camp" contract signed by the plaintiff's parents). *See also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (holding passenger ticket containing forum-selection clause enforceable notwithstanding lack of opportunity to negotiate); *Silva*, 239 F.3d at 389 (employer's alleged superior bargaining power deemed insufficient to void forum-selection clause contained in employment contract).

That leaves only the eighth and ninth factors, *i.e.*, the conduct of the parties coupled with the presence (or absence) of fraud, undue influence or the like. These factors, in the court's view, do not adequately tip the balance in Plaintiff's favor. Granted, at least one of Plaintiff's causes of action sounds in fraud; but the "fraud exception" " 'does not mean that mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the clause is unenforceable. Rather, it means that [a] . . . forum selection clause in a contract is not enforceable if the in-

---

**3.** Again, the court would typically not consider Mr. Reder's affidavit at the Rule 12(b)(6) stage since it is outside the four-corners of the complaint. *See Young*, 305 F.3d at 10–11. Even when considered, however, Mr. Reder's assertions do not alter the court's analysis.

**4.** At oral argument, Defendant reminded the court that Mr. Reder is not a party, merely a witness. Moreover, the court sees no reason why Mr. Reder cannot be deposed in Massachusetts or allowed to testify by remote electronic means. *See, e.g.*, Fed.R.Civ.P. 30(b)(7). *See also* Fed.R.Civ.P. 29 (parties may stipulate that depositions be taken "at any . . . place"); Fed.R.Civ.P. 32(a)(3)(c) (deposition may be used at trial if witness is unable to testify because of age, illness or infirmity).

*clusion of that clause in the contract* was the product of fraud or coercion.' " *Lambert*, 983 F.2d at 1121 (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (emphasis in original) (ellipses and alteration added by First Circuit). There is no such allegation here. In sum, there are no policy reasons to void the parties' forum-selection clause.

The court now turns to Plaintiff's third and final argument, namely, that a Texas order for equitable relief—*e.g.*, an injunction pertaining to Defendant's misuse of confidential information, as apparently allowed by paragraph 7 of the MCA—would be unenforceable in Massachusetts. (See Plaintiff's Brief at 16.) Aside from the fact that Plaintiff offers no caselaw in support of this argument, Plaintiff is mistaken. It is well-established that "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land," and the Supreme Court "has never placed equity decrees outside the full faith and credit domain." *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233, 234, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). Accordingly, the court has little choice but to reject this third argument and, hence, recommend that the MCA's forum-selection clause be enforced.

**III. CONCLUSION**

For the reasons stated, the court recommends that Defendant's motion to dismiss be ALLOWED. If adopted by the district court, this case would be dismissed without prejudice. *See Silva*, 239 F.3d at 386 (affirming "without prejudice" dismissal of action governed by valid, enforceable and mandatory forum-selection clause); *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850–51 (9th Cir.1997) ("Because a dismissal to enforce a forum selection clause is not a determination on the merits of any cause of action, it is appropriately 'without prejudice' so that the merits can be litigated elsewhere.").[5]

---

**5.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.